THE CHICAGO & ATCHISON BRIDGE COMPANY v. GEORGE FOWLER.

<div style="float:right">55 17<br>57 626<br>55 17<br>58 315</div>

1. INSOLVENT CORPORATION —*Preferences in Favor of Directors — Accounting for Trust Property*. Where a corporation is heavily indebted to its officers and stockholders, and such officers and stockholders enter into an agreement to discontinue business and divide and distribute the entire capital and assets of the corporation among themselves in payment of the indebtedness which they hold against the corporation, and when in accordance with the agreement they have wound up the business and distributed the assets, and there remains a large indebtedness unprovided for, the transaction will be deemed to be invalid as to any excluded creditor. In such case, the property and assets of the corporation will be deemed to be held in trust for the payment of the debts of the corporation, and any excluded creditor will be entitled to pursue it into the hands of any member of the corporation or other person who has taken the same with full knowledge of the facts; and if it has passed out of their hands they may be compelled to ac-

2—55 KAS.

count to such creditors, and to contribute *pro rata* toward the payment of the unpaid debts of the corporation to the extent of the fund so misapplied.

2. —————— *No Preference of Creditors, When.* Directors and managers of a corporation who are creditors of the same are not permitted, in closing up the business of the corporation, to make any agreement or arrangement by which they shall secure to themselves a preference or advantage over other creditors.

3. —————— *Parties to Action.* Where trust property has been conveyed to another, the trust cannot be enforced against the property itself without making the one to whom it was conveyed a party to the action; but his presence is not indispensable where it is sought to compel the one who wrongfully received and transferred the property to account for the fund so received and misapplied by him.

4. PLEADINGS— *Waiver of Defect.* Where there appears to be a defect of parties upon the face of the petition the defendant may demur thereto upon that ground, and where the petition does not disclose the defect the objection may be taken by answer; but if no objection is taken either by demurrer or answer the defendant is deemed to have waived the same.

5. ACTION BY RECEIVER— *Suspension of Statute of Limitations.* Before an action upon a judgment in favor of a corporation had become barred by the statute of limitations a receiver of the corporation was appointed with power to take possession of all the property and to collect all claims and demands due to the same, who brought an action upon the same judgment which remained pending until the receiver was discharged. *Held,* That the statute of limitations did not run during the pendency of the action brought by the receiver.

6. —————— *Creditor's Bill.* A judgment of the United States circuit court for the district of Kansas occupies the same footing as a judgment of the state court, and may be made the basis of a creditor's bill or other like equitable action in the state court, brought to protect the rights of creditors in a trust fund which has been wrongfully appropriated or misapplied.

7. CASE-MADE— *Notice.* Where a case-made is settled and signed without notice to one of the parties, the attempted settlement is a nullity; but the invalid effort to settle does not prevent the judge from settling and signing the same case at any time within the period allowed by law upon a notice duly given to the parties upon whom the case was served.

*Error from Wyandotte District Court.*

ON January 26, 1889, the Chicago & Atchison Bridge Company brought an action against the Anglo-American Packing and Provision Company, George Fowler, Alexander Muir, and Arthur Booth. In the petition it was alleged that on June 25, 1885, the bridge company obtained a judgment against the packing company in the United States circuit court for $3,404.74 ; that an execution was issued upon the judgment and placed in the hands of the United States marshal, who, on December 6, 1887, levied upon certain real estate in Wyandotte county as the property of the packing company. There is an allegation of the organization of the packing company on November 19, 1878, with a capital stock of $150,000, of which George Fowler was appointed the general manager, which position he continued to occupy until shortly before the rendition of the judgment in favor of the bridge company, on June 25, 1885, and that as such manager he had knowledge of the indebtedness of the packing company to the bridge company, and was aware that it had not been paid. It was alleged that on May 30, 1885, the packing company, by its officers, made a deed of conveyance pretending to convey all of the real estate in question to George Fowler for a pretended consideration of $580,000 ; that the conveyance was made for the purpose of defrauding the creditors of the packing company, and especially the plaintiff bridge company. It is alleged that there was no consideration for the transfer, and that the pretended indebtedness of the packing company to Fowler, claimed to be a consideration, was fraudulent and fictitious. It is alleged that at the time of the transfer the packing company had no other property or assets except that

included in the transfer, and that George Fowler accepted the conveyance for the purpose of carrying out the fraudulent intent and purpose of placing the property beyond the reach of the plaintiff and other creditors. It is alleged that shortly after the deed was made George Fowler conveyed the property in question to Alexander Muir and Arthur Booth, which conveyance, it is averred, was placed on record without any consideration whatever passing from Muir and Booth to either Fowler or the packing company. There is a further averment that the bridge company did not discover the alleged fraud until within 12 months before the bringing of the action. The packing company is alleged to be insolvent, and that since the transfer of its property and assets it has ceased to do business, and has practically abandoned its corporate rights and privileges. The prayer of the petition is that the property should be adjudged to be that of the packing company and subject to the payment of the judgment of the bridge company, and that George Fowler be held to have received and held the property in trust for the benefit of the creditors of the packing company, and that the same shall be subjected to the payment of such judgment. There is a further prayer that in case the property cannot be subjected to the payment of the judgment, George Fowler shall be required to account for the value of the property up to the amount necessary to pay the judgment, and that the bridge company have judgment against him for the sum of $3,768.64. George Fowler filed a separate answer admitting the organization of the packing company, the acquiring of the property described, the transfer of the same and that the title thereto had been conveyed to Muir and Booth. He denies all of the allegations charging fraud against himself, the

packing company or its officers. He further alleges that the causes of action set forth in the plaintiff's petition are barred by the statute of limitations. The answer was verified.

The cause was submitted to the court upon an agreed statement of facts, it being stipulated that either party might object to any of the admitted facts as irrelevant and immaterial under the issues made by the pleadings. The agreed statement is as follows :

"1. The plaintiff obtained judgment in the United States circuit court, June 25, 1885, against the Anglo-American Packing and Provision Company, on a cause of action which accrued, as alleged in the petition, for a debt incurred by said packing company in the operation of its packing-house at Winthrop, Mo.

"2. That the judgment, to the amount of $4,900, for principal, interest and costs to this date remains unpaid.

"3. That executions were issued and returned as set forth in the petition, and the United States marshal took such action as shown by his returns indorsed on executions as set forth in petition.

"4. That said Anglo-American Packing and Provision Company was incorporated under the laws of the state of Illinois only, November 19, 1878, as shown by the charter and certificates of incorporation annexed hereto as Exhibit A.

"5. That Robert Fowler, Anderson Fowler, George Fowler and John Fowler were the sole stockholders of the Anglo-American Packing and Provision Company, and Robert Fowler was the president and Anderson Fowler was the secretary, and George Fowler was the manager of the Atchison house, at Winthrop, until it was closed out in the fall of 1883.

"6. Robert Fowler, Anderson Fowler and George Fowler were stockholders in said Anglo-American Packing and Provision Company during all the time from its incorporation to date it went out of and ceased to do business.

"7.  Anderson Fowler, George Fowler, Robert D. Fowler, John Fowler, Wm. Fowler and Alexander Fowler were the persons who comprised the firm of Fowler Bros.

"8.  On the 1st day of May, 1884, the Anglo-American Packing and Provision Company was indebted to the firm of said Fowler Bros. in about $2,000,000 ; and on that day the deed referred to in plaintiff's petition, a copy of which is hereto annexed as Exhibit B, was executed as shown by said deed, but was not recorded until the 30th day of May, 1885.

"9.  On May 1, 1884, the date of said deed, the Anglo-American Packing and Provision Company owned and were operating a packing-house in Chicago, the property described in the petition, and owned a packing-house in Winthrop, Mo., the title of which last-mentioned property was in the name of Robert Fowler in trust for the company, and operated by the company until the fall of 1883.

"10.  In July, 1885, all of the Chicago property was conveyed to Anderson Fowler, Robert Fowler, and William Fowler, in payment of debts due from the Anglo-American Packing and Provision Company to Fowler Bros.

"11.  In the fall of 1883, the machinery in the packing-house at Winthrop, Mo., was all removed to Kansas City, Kas., and in the winter of 1886 the Winthrop packing-house was burned and was destroyed.  In May, 1884, the packing-house at Winthrop, Mo., was worth $20,000.

"12.  At the date the executions referred to in the petitions of the plaintiff were issued the Anglo-American Packing and Provision Company had no property except as hereinbefore stated, and was still indebted to Fowler Bros. in the sum exceeding $200,000.

"13.  The consideration of the deed to George Fowler of the property described in the petition was $580,-000, which was the fair value of the property.  Part was paid in cash, and he executed notes to Anderson Fowler, Robert Fowler and William Fowler as part consideration therefor, which have been paid.  There

was no money paid directly to the Anglo-American Packing and Provision Company or notes given to the company, but the money was paid and notes given as aforesaid to satisfy a debt of the Anglo-American Packing and Provision Company to Fowler Bros., which was done with consent of Anglo-American Packing and Provision Company.

"14. The capital stock of the Anglo-American Packing and Provision Company was $150,000, which was paid up.

"15. On May 1, 1884, and prior thereto, George Fowler knew of the claim of the Chicago & Atchison Bridge Company against the Anglo-American Packing and Provision Company referred to in plaintiff's petition; but he was then in good faith contesting the claim for the Anglo-American Packing and Provision Company on the ground that there was no liability; and he knew that no special provision, except as hereinafter shown, had been made for the payment of said claim of plaintiff against the Anglo-American Packing and Provision Company by said company; and he continued to contest same for said Anglo-American Packing and Provision Company, until same was reduced to judgment.

"16. On May 1, 1884, the property described in plaintiff's petition was delivered to George Fowler, and he took possession thereof, and has since operated the same in his own name.

"17. In February, 1888, John C. Tomlinson was duly appointed receiver of the plaintiff as alleged in the petition herein, and in March, 1888, instituted an action in this court as alleged in the petition, which action was dismissed as alleged in the petition, and John C. Tomlinson as such receiver was thereafter discharged by said United States court, as alleged in the petition, and the only order of court for such action by said receiver is his order of appointment hereto attached, as Exhibit C.

"18. The statutes of the state of Illinois are as alleged in plaintiff's petition, and the same were in force at the time the Anglo-American Packing and

Provision Company was incorporated, and have since remained in force. Said statutes of Illinois provide further, that the remedy given by the statutes may be enforced by a suit in chancery.

"19. On May 1, 1884, and as a part of the same transaction of the execution of said deed of that date to George Fowler, a written contract was entered into between John, George, William, Anderson and Robert Fowler, dissolving the partnership firm of Fowler Bros., in which it was stipulated with reference to the packing-house at Winthrop, Mo., as follows: 'The said packing-house and property at Winthrop shall be sold and realized, and after first discharging all debts, liabilities and outgoings affecting the same, the moneys arising from such sale and realization shall be applied, firstly, in repaying to each partner the amount of capital invested by him in said concern, and interest thereon; and the ultimate surplus shall be divided equally amongst all of the parties hereto; it being understood that any loss which may arise on the sale and realization of the last-mentioned premises shall in the final adjustment of accounts be borne by all the parties hereto in equal shares.' But of this agreement the plaintiff had no notice until November 14, 1889.

"20. The Anglo-American Packing and Provision Company had been operating the packing-house at Kansas City, Kas., for about three years previous to May 1, 1884, and when George Fowler assumed control of said property, under deed of May 1, 1884, he took the business and property of said company at Kansas City, Kas., as it stood on April 30, 1884, on the books of the company which pertain to said business at Kansas City, Kas., which transfer of said property and business at Kansas City, Kas., was provided for in said written contract of date May 1, 1884, between said John, William, Anderson, George and Robert Fowler, and which said agreement provided for the execution of said deed, May 1, 1884, which agreement provided further that said George Fowler, 'as purchaser, shall take over, as a going concern, at the respective sums at which they stand or will stand

on the books of the company on the 30th day of April, 1884, all of the business assets of the business heretofore carried on by the Anglo-American Packing and Provision Company at Kansas City, Kas., which included the real estate described in plaintiff's petition, and by the terms and conditions of the same agreement the Chicago property was subsequently in like manner transferred to Anderson, Robert and William Fowler, upon their assuming the liabilities of the Anglo-American Packing and Provision Company growing out of the business at Chicago, Ill., which said agreement was subject to the ratification of the Anglo-American Packing and Provision Company; and thereafter, said agreement of date May 1, 1884, was consummated by deed to George Fowler (Exhibit A, hereto attached), and a like deed to the Chicago property, to Anderson, Robert and William Fowler, which last deed bears date July, 1885.

"21. On May 1, 1884, the liabilities of the Anglo-American Packing and Provision Company amounted to about $2,000,000, due said Fowler Bros., for money theretofore advanced to said Anglo-American Packing and Provision Company by them in its business and in payment of its obligations theretofore created, and the foregoing debts to said Fowler Bros. and the claim of the plaintiff were all the debts and liabilities of the Anglo-American Packing and Provision Company, May 1, 1884, date of said agreement, all of which debts and liabilities were paid before commencement of this action, except the claim and judgment of plaintiff and balance of $200,000 due Fowler Bros.

"22. It is agreed that from June 25, 1885, to June 25, 1888, George Fowler was absent from the state of Kansas one year, and present in the state two years between said dates.

"23. The foregoing are all of material facts in this case, but are not to be construed as modifying any admissions made in the pleadings, and if, upon the pleadings and facts as herein stipulated, the plaintiff is entitled to recover, the amount thereof shall be $4,900, with interest from November 14, 1889. The foregoing is all the evidence."

Upon this statement the court gave judgment against the bridge company and in favor of the defendant, Fowler, for costs. Of this judgment the plaintiff complains.

*B. P. Waggener*, *D. Martin*, *J. W. Orr*, and *F. D. Mills*, for plaintiff in error.

*Hutchings & Keplinger*, for executors of defendant in error Fowler, deceased.

The opinion of the court was delivered by

JOHNSTON, J. : Several questions are presented upon a preliminary motion to dismiss the proceeding in error. One ground of the motion is that the case-made is invalid, having been allowed without notice. By the terms of the order the case was to be settled and signed on three days' notice, and it appears that after it was duly served it was presented to the judge, who settled and signed the same without notice to the defendant. Afterward, and before the expiration of the year, a notice was served that on a certain day the case would be presented for allowance, and upon that day the case was presented, amendments thereto were suggested by the defendant, and without any objection the case was duly settled and signed. The first attempt of the judge to settle the case was a nullity for want of notice to the defendant. The case-made was duly served, notice was duly given, 7. Case-made— notice. and the case-made was settled within the time allowed by law. The void effort to settle did not tie the hands of the judge nor prevent him from performing the duty which the law requires. Another ground of the motion is, that George Fowler having died since this proceeding was begun, and as it has not been revived against his heirs at law or de-

visees, the proceeding abates by force of the statute. Soon after the death of the defendant, the proceeding was revived by stipulation against the executor and trustees of the last will and testament of George Fowler, deceased. The action taken appears to have been sufficient as against the personal representatives of the deceased, but it is contended that, as the action is brought to enforce a trust in real estate in which the deceased. had an interest, the action survived only as against the heirs and devisees of the deceased, and not against the personal representatives. If the sole purpose of the action had been to subject real estate to the payment of the judgment, and to decree a sale of the land in satisfaction of the judgment, there would be considerable force in the contention of the defendant; but as 'the plaintiff asked and, as we shall hereafter see, was entitled to recover a personal judgment, it was proper that the revivor should be made against the personal representatives of the deceased. The final ground urged for dismissal is that there is a defect of parties. It is contended that several parties who were named as defendants in the petition were necessary to a review of the proceedings in this court. If a joint judgment had been rendered for or against them, or if the judgment rendered could not be reversed or modified without affecting them all, then it would be necessary that all of them should be made parties to this proceeding; but the judgment sought to be reviewed was against the bridge company and in favor of George Fowler alone. It does not appear that service was made upon any of the other defendants who were named in the petition, and their rights were not determined in the action. Their absence, as we shall see later on, did not prevent the court from enforcing the personal liability of · George

Fowler, and as no judgment for or against them was rendered in the court below, and as they are not to be affected by this proceeding, they are not necessary parties here.

The plaintiff insists that upon the merits it should have been awarded judgment against George Fowler for the full amount of its claim. Of the validity of the debt and judgment held by the bridge company there is no question. When the debt accrued, the packing company was a going concern, operating packing-houses at Chicago, Kansas City, and at Winthrop, near to the city of Atchison. The company was organized in 1878, under the laws of Illinois, and George Fowler was one of the promoters and also a director of the corporation during a great part of the time it was engaged in business. As the agreed facts show, the Fowlers were the sole stockholders, and had absolute control of the corporation. The members of the corporation were also members of the partnership of Fowler Bros., and George Fowler was a manager of one of the packing-houses while it was in operation. In 1884, the Fowlers entered into an agreement with each other to wind up the business and distribute among themselves the entire assets of the corporation. Although the capital stock of the corporation was only $150,000, the members of the company had at that time assumed an indebtedness of more than $2,000,000, and the statutes of Illinois, under one of which the company was organized, provided that "if the indebtedness of any stock corporation shall exceed the amount of the capital stock, the directors and officers of such corporation assenting thereto shall be personally and individually liable for such excess to the creditors of such corporation." (Law of 1871–'72, § 16, p. 300.)

It appears that the greater part of the indebtedness

of the company was due to the Fowlers, but before
they divided the assets among themselves the debt of
the bridge company had accrued.   While there is no
specific statement that the company was insolvent
when the transfer of the property was made in 1884,
it is shown that when the assets were distributed in
accordance with the agreement then made, there still
remained an unpaid debt of more than $200,000.
By that agreement the officers and stockholders of
the company divided its entire capital and assets,
and in that way deprived it of all facilities to carry
on business or to exercise the functions of a corpora-
tion.   The company being in such a condition, the
action of its officers and stockholders in absorbing
the entire assets of the company and dividing them
among themselves operated as a wrong as against the
excluded creditors.   In its disabled condition, and the
assets being insufficient to meet the liabilities of the
company, its property became a trust fund for the
payment of its debts.   In equity the cred-
itors have a lien upon the property superior
to the claim of any of the stockholders and
they are entitled to follow it into the hands
of anyone who has notice of the trust.   If
it has been taken by one who is chargeable with notice
of the condition of the corporation and of the purposes
of the officers and stockholders who propose wrong-
fully to withdraw the capital and divide and distribute
the assets, he will be held to be a trustee and made to
account to the creditors to the extent of the property
so misapplied.   By the agreement made May 1, 1884,
the Fowlers not only proceeded to wind up the busi-
ness of the corporation but also to dissolve the part-
nership firm of Fowler Bros.   As has been seen, the
Fowlers who were members of the corporation were

1. Insolvent
corporation—
preferences
in favor of
directors—
accounting
for trust
property.

also members of the firm to whom the corporation owed the principal part of the indebtedness. In effect the agreement was to transfer the property to themselves. George Fowler, although not a director at the time of the transfer, had been such, and was at that time a stockholder of the company. He was also a member of the firm of Fowler Bros., and was therefore cognizant of the facts which would invalidate the transaction, and must have known that the members of the corporation were dividing the whole assets of the same among themselves, without paying or making adequate provision for the debt of the bridge company. It is true that in the agreement it was provided that when the property at Winthrop should be sold, the assets and liabilities affecting the same should be discharged; but this property and its proceeds were retained within the control of the Fowlers, and they have never paid the debt, nor have they made any adequate provision for its payment from that or any other of the resources of the company. There was conveyed to George Fowler from the assets of the company property of the value of $580,000. It is stipulated that he gave this amount in cash and notes to his brothers, but the money and notes were not given to the company, but were actually paid over to Fowler Bros., of which firm George Fowler was a member. He was the manager of the packing-house when the debt to the bridge company accrued, and has resisted the same from the outset. He knew of the relationship which existed between the members of the company and the members of the firm. He was acquainted with the fact that the directors had without authority contracted debts far in excess of the capital stock, and that these directors, who were members of the firm of Fowler Bros., had

made themselves liable for this excess of indebtedness to the extent of about $1,850,000. He knew that his associates had no authority to make a contract with themselves, nor to make a disposition of the assets which would exclude the creditors from a share of the assets. Those who conducted the negotiations by which the assets of. the corporation were absorbed controlled both sides of the agreement, and the effect of the negotiations was a transfer of the assets to them individually.

"The law will not permit them to manage the affairs of the corporation for their personal and private advantage when their duty would require them to work for and use reasonable efforts for the general interests of the corporation and its stockholders and creditors." (*Ryan v. Railway Co.*, 21 Kas. 398.)

In the same case it is held that if persons other than the directors and officers of the corporation participated with them in their illegal transactions with knowledge of all the facts, equity will hold them to their just responsibilities, following the trust property into the hands of remote grantees and purchasers who take it with notice of the trust in order to subject it to the trust. Under the facts George Fowler cannot be regarded as a *bona fide* purchaser of the property, but having had full knowledge of all the facts he is equally liable with the officers who made the wrongful transfer.

" Equity regards the property of a corporation as held in trust for the payment of the debts of the corporation, and recognizes the right of creditors to pursue it into whosoever possession it may be transferred, unless it has passed into the hands of a *bona fide* purchaser. . . . Assets derived from the sale of the capital stock of the corporation, or of its property, become, as respects creditors, the substitutes for

the things sold, and as such they are subject to the same liabilities and restrictions as the things sold were before the sale and while they remained in the possession of the corporation. Even the sale.of the entire capital stock of the company and the division of the proceeds of the sale among the stockholders will not defeat the trust nor impair the remedy of the creditors if any debts remain unpaid, as the creditors in that event may pursue the consideration of the sale in the hands of the respective stockholders, and compel each one, to the extent of the fund, to contribute *pro rata* toward the payment of.their debts out of the moneys so received and in their hands. . . .
Moneys derived from the sale and transfer of the franchises and capital stock of an incorporated company are assets of the corporation, and as such constitute a fund for the payment of its debts, and if held by the corporation itself and so invested as to be subject to legal process, the fund may be levied on by such process ; but if the fund has been distributed among the stockholders or passed into the hands of other than *bona fide* creditors or purchasers, leaving any debts of the corporation unpaid, the established rule in equity is that such holders take the fund charged with the trust in favor of creditors, which a court of equity will enforce, and compel the application of the same to the satisfaction of their debts.''
(*Railway Co. v. Howard*, 74 U. S. 409, and cases cited.)

In *Bradley v. Farwell*, 1 Holmes, 433, it is said that—

'' The fiduciary relation between the directors and the creditors being established, and the fact that the trustees in dealing with the trust fund have secured to themselves a benefit or advantage over the creditors, or a benefit or advantage to themselves as creditors over and above the other creditors, taints the transaction and invokes the aid of a court of equity to see to the right execution of the trust. Not that the trustees cannot prefer one creditor to the others at common law and outside of the provisions of the bankrupt act, but that, in equity, a trustee cannot contract with himself as he may with third parties. If he exercises in his own

favor the powers he may rightfully exercise in favor of another, the court does not stop to inquire whether he gained or lost. It is enough that the beneficiary is dissatisfied with the transaction for the court to set the transaction aside without requiring the beneficiary to prove actual loss or actual fraud.''

It must be assumed that the Fowlers were *bona fide* creditors of the corporation, and therefore were entitled to a *pro rata* distribution of the assets. But, being directors and managers of the corporation, the law will not permit them to secure to themselves any preference or advantage over other creditors. (*Hays v. Citizens' Bank*, 51 Kas. 535.) Under the rules of equity, George Fowler took the property charged with a trust in favor of the creditors. If the property remained in his hands, the creditors might enforce a trust against the same; but, as it has passed out of his hands, he may be compelled to account for the fund and contribute *pro rata* toward the payment of the debts of the company to the extent of the fund which he has received. It is contended in his behalf that if it is granted that the assets should have been applied *pro rata* upon the debts of the company, and therefore that George Fowler must refund all that he has received in excess of his *pro rata* share, that his interest in the partnership is not shown, and therefore it cannot be determined the amount he is liable to refund. We have no such difficulty in this case, as it is agreed that, if the plaintiff is entitled to recover, the amount of recovery shall be $4,900, with interest from November 14, 1889. Were it not for this agreement there would be some difficulty in determining the amount which the plaintiff would obtain upon a *pro rata* distribution of the assets. It is clear, however, upon the agreed facts, that the plaintiff was a *bona*

3—55 KAS.

*2. No preference of creditors, when.*

*fide* creditor and is entitled to recover from George Fowler, who, with notice of all the circumstances, has appropriated to himself more than half a million of dollars of the assets of the corporation, and that the agreement made fixes the amount of such recovery.

It is strongly contended that there is a defect of parties and that Muir, Booth, the company and Fowler Bros. are indispensable parties. As already indicated, the presence of Muir and Booth would be necessary to proceedings to subject the property which has been transferred to the payment of the plaintiff's judgment. They are named in the petition, but whether they were served or not does not appear, and in their absence that kind of relief cannot be granted.

That, however, will not prevent a personal accounting by George Fowler of so much of the trust fund as he may have received and placed beyond his control. In respect to the other parties alleged to be necessary to a final disposition of the cause, the objection made by the defendant is not available. No objection with respect to the parties was made in the court below. Under § 89 of the code, where upon the face of the petition there appears to be a defect of parties plaintiff or defendant, the defendant may demur thereto upon that ground, and where the petition does not disclose that fact the objection may be taken by answer; but if no objection is taken either by demurrer or answer, the defendant is deemed to have waived the same. ( Civil Code, § 91 ; *Railway Co. v. Nichols,* 9 Kas. 248 ; *Parker v. Wiggins,* 10 id. 420 ; *Gilmore v. Norton,* 10 id. 491 ; *Seip v. Tilghman,* 23 id. 291.)

There is a further contention that the cause is barred

3. Parties to action.

4. Pleadings— waiver of defect.

by the statute of limitations, which provides that an action for relief on the ground of fraud must be brought within two years after it accrues.   The judgment was obtained, as we have seen, in June, 1885, and this action was not brought until January 26, 1889.   Laying aside the fact that the execution was not issued upon the judgment until 1887, it still appears that the cause is not barred.   An action upon the same judgment was brought against the defendant by John C. Tomlinson, as receiver of the bridge company, in March, 1888, and that action remained pending until about the time the present action was begun, when it was dismissed without prejudice, the receiver having been discharged.   As Tomlinson was appointed receiver of all the property of the bridge company, and was authorized to collect all claims and demands due to the company, he was a proper party to bring the suit, and hence the statute did not run during the pendency of that action.

5. Action by receiver— suspension of statute of limitations.

It is true that about 2 years and 10 months elapsed between the rendition of the judgment which is the basis of this action and the time when the action was brought by the receiver, but it is agreed that between June 25, 1885, and June 25, 1888, George Fowler was absent from the state one year, and therefore the bar was not complete.

It is finally urged in support of the judgment that this action cannot be maintained upon the judgment of the circuit court of the United States.   We think the judgment of the federal court for the district of Kansas cannot be regarded as that of a foreign court. While there is some diversity of judicial opinion upon this question, there can be little doubt that it was the intention of the legislature of Kansas to put the judg-

**6. Creditor's bill.** ments of the circuit court rendered within this state upon an equal footing with the judgments of courts of record of the state. Under § 419 of the civil code it is provided that "judgments of courts of record of this state, and of courts of the United States rendered within this state, shall be liens on the real estate of the debtor within the county in which the judgment is rendered." See, also, *Ballin v. Loeb*, 78 Wis. 404; *Bullitt v. Taylor*, 34 Miss. 708; *Embry v. Palmer*, 107 U. S. 10; *Stock Co. v. Butchers' Union*, 120 id. 141; *Bank v. Construction Co.*, Fed. Rep. 314.

The judgment of the district court will be reversed, and the cause remanded, with the direction to enter judgment in favor of the Chicago & Atchison Bridge Company against the executor and trustees of the estate of deceased for the sum of $4,900, with interest from November 15, 1889.

All the Justices concurring.