SARPY BERTHOLD et al., Respondents, v. HOLLADAY-
    KLOTZ LAND AND LUMBER COMPANY,
                    Appellant.

### St. Louis Court of Appeals, December 17, 1901.

1. **Equity:** ONE CORPORATION MERGED INTO ANOTHER WHICH TAKES ITS PROPERTY, LIABILITY OF. It is a settled rule of equity jurisprudence that where one corporation is consolidated with another, or merged in another, which takes its property, such new corporation is bound to discharge the liabilities of the old one.

2. ———: ———: CREDITORS: LIEN. In the case at bar, the new company took the assets of the old one *cum onere*—impressed with a lien in favor of the creditors of the old; for they were acquired by a transaction outside the ordinary course of business.

3. ———: ———: ———: ASSETS. And the continuance of the first company as a corporation *de jure,* after it had ceased to exist as one *de facto,* constitutes no barrier to this suit by the creditors to enforce their judgment against its property in the hands of its successor.

4. ———: ———: ———: RETURN OF NULLA BONA AGAINST A CORPORATION MAKES PRIMA FACIE CASE OF INSOLVENCY AGAINST CORPORATION WHICH SUCCEEDED IT. In the case at bar, the return of the execution *nulla bona,* made a prima facie case of insolvency on the part of the Holladay-Klotz Land and Lumber Company, and opened the way for this proceeding against its assets in the hands of its successor. The transfer to the defendant company was made pending the action by the plaintiffs to recover their claim, and there can be no question whatever that defendant is responsible to them to the extent of the value of the property in its hands which belonged to the first corporation.

5. **Statutory Remedy:** EQUITY: PRACTICE AND PLEADING. Where a remedy exists in equity, a subsequent statute creating another at law will not extinguish the equitable one, unless the statute contains a direct and positive inhibition against its further exercise.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

AFFIRMED.

*John H. Overall* and *J. F. Green* for appellant.

(1) The respondents mistook their remedy, and should have proceeded against the estate of H. N. Holladay, who was the director of the H. N. Holladay Lumber and Mercantile Company, who appropriated the property of that concern. R. S. 1899, sec. 1338; Hickman v. City of Kansas, 120 Mo. 110. (2) The doctrine of equity operative for the benefit of creditors of a corporation which is merged in another corporation, or which distributes its assets among its stockholders, without first having paid its first debts, or which reorganizes under the form of a new corporation, by transferring all of its assets to such new corporation, leaving its own debts unpaid has no place upon this record, in view of the undisputed facts: First. There is no likeness to a merger in the facts. Adjudications of which Thompson v. Abbott, 61 Mo. 176, and Hughes v. School District, 72 Mo. 643, are examples, do not apply to the case made by such facts. Secondly. There is nothing in the record which is even suggestive of a distribution of assets by the Holladay Lumber & Mercantile Company without first having paid its just and existing liabilities. Adjudications, like Heman v. Britton, 88 Mo. 549, and Mo. Lead Mining & Smelting Co., 114 Mo. 218, have no application. Thirdly. The Holladay Lumber & Mercantile Company was not reorganized under the form of a new corporation to which all of its assets are transferred without consideration, without payment of its existing debts, or to avoid if possible the payment of such debts. The appellant was not a corporation which was successor to some existing corporation. It did not obtain all of the assets of some precedent corporation. Of such

assets as it became possessed of, it was a purchaser for value and not merely a fraudulent distributee, without consideration.

*Kehr & Tittman* for respondents.

(1)   A new corporation which absorbs the assets of an old corporation assumes the liabilities of the latter.   Thompson v. Abbott, 61 Mo. 176; Hughes v. School District, 72 Mo. 643; Eans v. Bank, 79 Mo. 182.   (2) The assets of a corporation constitute a trust fund for the payment of its debts and where a corporation transfers its assets to another corporation, the purchasing corporation takes the property subject to an equitable lien or charge in favor of the creditors of the selling corporation.   Heman v. Britton, 88 Mo. 549; Slattery v. Transportation Co., 91 Mo. 217; Mo. Lead M. & S. Co. v. Reinhard, 114 Mo. 218; Railroad v. Bank, 134 U. S. 276; Grenell v. Detroit Gas Co., 112 Mich. 70.

GOODE, J.—Plaintiffs instituted an action in the circuit court of the city of St. Louis on the twenty-fourth day of August, 1895, against the H. N. Holladay Lumber and Mercantile Company, on an account, and recovered judgment in said cause thereafter on the sixth day of March, 1899, for two thousand six hundred and eighty-three dollars and seventy-nine cents for their debt and six hundred and twenty-eight dollars and sixty-two cents for costs.   Afterwards, two executions were issued on said judgment and returned *nulla bona.* Thereupon the plaintiffs began the present suit in the nature of a creditor's bill against the Holladay-Klotz Land and Lumber Company to collect said judgment, on the grounds that the defendant company acquired possession of and title to all the assets of the H. N. Holladay Lumber and Mercantile Company, after the institution of plaintiffs' action against the last named company; that the defendant company was organized for the

purpose of absorbing said H. N. Holladay Lumber and Mercantile Company and did absorb its business, assets and goodwill and afterwards carried on the same enterprises, operated the same plants, ran the same stores and in all respects continued the business of the former company and became, in equity, chargeable with the liabilities of said former company, no provision having been made for their payment when it was merged in the defendant company.

The testimony shows that H. N. Holladay, now deceased, was the sole owner of the Holladay Lumber and Mercantile Company, which possessed at the time plaintiffs' action against it was instituted, assets worth more than three hundred thousand dollars. *He was the company,* it was testified. About that time an arrangement was made between said Holladay, Richard J. Medley, Ely Klotz and C. C. Rainwater, some of whom, at least, were creditors of the Holladay Mercantile and Lumber Company, for the organization of a new corporation with an enlarged capital, to take over the property and business of the old one. Pursuant to this arrangement, substantially all the assets of said mercantile and lumber company, as well as some individual assets of Holladay, were transferred to Rainwater as trustee, to be held for the benefit of all parties in interest until the new corporation was formed. Said parties immediately organized the Holladay-Klotz Land and Lumber Company, the defendant in this action, with a capital stock of six hundred thousand dollars, which, we believe, was paid solely by said trustee transferring to it the assets of the Holladay Mercantile and Lumber Company and of H. N. Holladay, which had been theretofore transferred to him. This transfer vested in the defendant company all the property and assets of the old company except, perhaps, its accounts, notes and bills receivable, if it had any; whether it had any and if so of what value, does not appear. The new company got its lands, store, sawmills, tools, machinery, shops, eleven miles of railroad, in fact everything which made it a going concern. It

thereupon ceased business, the business being afterwards con-
ducted by the defendant company.  Holladay, as has been
stated, owned all the stock of the former company and the
majority of that of the new one.  All the assets of the new
company were made up of the assets of the old except certain
lands, the title to which stood in Holladay's individual name.
The evidence in the case satisfies us the facts are as stated.
On them the court below found that the defendant company
received, absorbed and took over the assets of the H. N. Hol-
laday Lumber and Mercantile Company, its business and
good-will, of the value of three hundred thousand dollars or
more, and thereafter carried on business with said assets as
the successor of the former company; that said property when
so received, absorbed, and taken over by the defendant was a
trust fund for the payment of plaintiff's demand and by ab-
sorbing the same, together with the business of the old com-
pany, the defendant became liable to plaintiffs for the afore-
said judgment, which it was ordered to pay within ten days
from the date of the decree, or an execution would issue.

Nothing can be made of the transactions by which the
assets of the H. N. Holladay Lumber and Mercantile Com-
pany passed, first to the trustee of the syndicate, and after-
wards to the new corporation which the members of the syndi-
cate organized, with themselves as the only incorporators, ex-
cept an absorption of the old corporation by the new one.
While the old one may have nominally continued in existence
for the purpose of collecting debts owing to it, if in fact any
solvent ones were owing, it ceased to have vitality or force
as an active concern.  The defendant company super-
seded it in the performance of every function which it had
been created to perform, operated its mills, railroads and
shops and carried on its mercantile, tie and lumber business,
all at the same places, with the same equipment and in
the same manner it had theretofore done.  We can not
accede to the proposition that the old corporation was still

such an independent and vital entity that its creditors were bound to look only to it for the collection of their debts and could not pursue the assets which had passed into the hands of the defendant. It is a settled rule of equity jurisprudence that where one corporation is consolidated with another, or merged in another, which takes its property, such new corporation is bound to discharge the liabilities of the old one. Thompson v. Abbott et al., 61 Mo. 176; Hugher v. School District No. 29, 72 Mo. 643; Eans v. Exchange Bank of Jefferson City, 79 Mo. 182. It is contended, however, there was no merger of the former corporation in the new one, but that it still lived. We think the evidence fully and fairly justifies the conclusion that the Holladay Mercantile and Lumber Company had no substantial assets left after the transfer in question, no reason to exist, and became practically extinct. The new company took those assets *cum onere*—impressed with a lien in favor of the creditors of the old; for they were acquired by a transaction outside the ordinary course of business. 5 Thompson on Corporations, sec. 6547. The continuance of the first company as a corporation *de jure,* after it had ceased to exist as one *de facto,* constitutes no barrier to this suit by creditors to enforce their judgment against its property in the hands of its successor. To make available the equitable remedies in favor of a creditor of a defunct corporation it is sufficient that it had done or suffered acts which destroyed the end and object for which it was created. Slee v. Bloom, 19 Johns. (N. Y.) 456; Briggs v. Penniman, 8 Cow. (N. Y.) 387; 3 Thompson on Corporations, sec. 3345. That contingency had certainly arisen here.

There is some meagre and unsatisfactory testimony by one witness, that the syndicate, as he styled it, paid about one hundred thousand dollars in cash and the balance in notes to Holladay for the property received by the four men composing the syndicate (of whom Holladay himself was one) for the property received from the mercantile and lumber company

and from Holladay personally. Nothing was shown about how much the alleged consideration for the transfer was, the number, amount, or maturity of the notes given, how much cash each individual paid, nor, in fact, how much was paid by all of them. All that was shown on that point is as follows:

"Q. What did those four men that you speak of pay the H. N. Holladay Lumber and Mercantile Company for this transfer of assets? A. Cash and notes.

"Q. How much cash? A. I should judge close on to one hundred thousand dollars cash; in that neighborhood and the balance in notes.

"Q. What do you mean by notes? A. I think some of the parties bought by their notes—executing their notes.

"Q. To whom? A. To H. N. Holladay."

There is no corroboration of this testimony. On the other hand, Klotz swore Holladay got six hundred and ninety shares of stock, worth three hundred and forty-five thousand dollars of the Holladay-Klotz Lumber Company for which he paid no cash, but only turned over his interest in the property of the syndicate, which had practically all been obtained from the Holladay Mercantile and Lumber Company. He also swore that either Holladay or the Holladay Mercantile and Lumber Company, he could not remember which, owed him forty thousand dollars which went to pay for his stock in the defendant company. It is so improbable that Holladay was paid a hundred thousand dollars in cash and the balance in notes for the property transferred by the old company to the syndicate, and yet owned personally an interest in said property afterwards, large enough to pay for three hundred and forty-five thousand dollars of stock in the new one, that we decline to accept that version of the affair. The defendant company was capitalized for six hundred thousand dollars. There is testimony that the assets received from the former one were taken at a valuation of four hundred thousand dol-

lars and also testimony that they fully paid up the defendant's capital. If, in fact, any cash and notes were paid, which point is very obscure, they likely went towards payment of the capital and extension of the business.

But on the most favorable view of the foregoing testimony, Holladay simply disposed of the assets of the first company for his own benefit, with the knowledge and assistance of his associates in the new concern, without regard to the rights of the creditors of the first one or delivering to it anything of value as a consideration. This could not be done lawfully. The three hundred thousand dollars' worth of property acquired by the defendant from the former company was assets in the hands of that company for the payment of its debts to which its creditors had access; it could not be withdrawn from the reach of creditors by a transfer to a new corporation in payment of the stock thereof; but stood still charged in the hands of such new company with an equity in favor of the creditors of the old. This is a firmly established principle which, so far as we are aware, has never been departed from and is certainly recognized and enforced by the courts of this State. Slattery v. Transportation Co., 91 Mo. 217; Mo. Lead M. & S. Co. v. Reinhard, 114 Mo. 218; Chicago, etc., R. R. Co. v. Third N. Bank, 134 U. S. 276; Vance v. McNabb, etc., Coal Co., 92 Tenn. 47; Grenell v. Detroit Gas Co., 112 Mich. 70; Montgomery Web. Co. v. Dienett, 133 Pa. St. 585; Couse v. Columbia Powder Co., 33 Atl. Rep. 297; Chicago & Atchison Bridge Co. v. Fowler, 55 Kan. 17; Louisville, etc., Ry. Co. v. Boney, 117 Ind. 501; McVicker v. American Opera Co., 40 Fed. Rep. 861; Barksdale v. Finney, 14 Gratt. 338; Harrison v. U. P. Ry. Co., 4 McCrary 264.

The return of the executions *nulla bona,* made a prima facie case of insolvency on the part of the Holladay Mercantile and Lumber Company and opened the way for this proceeding against its assets in the hands of its successor. The transfer

to the defendant company was made pending the action by the plaintiffs to recover their claim, and there can be no question whatever that defendant is responsible to them to the extent of the value of the property in its hands which belonged to the first corporation.    This was expressly decided in Slattery v. Transportation Co., supra, from which, as well as from Mo. Lead M. & S. Co. v. Reinhard, 114 Mo., supra, the present controversy is undistinguishable on principle.

We do not appreciate the force of appellant's argument, that respondents were bound to proceed against the estate of H. N. Holladay on account of the remedy given by the statute against directors, managers, trustees, and other officers in favor of creditors for all sums of money and the value of all property which they may have acquired to themselves, transferred to others, or lost, or wasted by any violation of their duties or abuse of their powers.    R. S. 1899, sec. 1338.    The position that that statutory remedy against the directors took away the old right in equity to follow the assets into the hands of the new company which absorbed them is untenable.    The statutory remedy is merely a cumulative one in favor of creditors, leaving intact those already existing.    The rule is ancient that where a remedy exists in equity, a subsequent statute creating another at law, will not extinguish the equitable one unless the statute contains a direct and positive inhibition against its further exercise.    Woodward v. Woodward et al., 148 Mo. 241.

The judgment is affirmed.    All concur.