## CULBERTSON v. MANN.

No. 1174.   Opinion Filed November 18, 1911.

(120 Pac. 918.)

1.  APPEAL AND ERROR—Defect of Parties—Motion to Dismiss in Trial Court. A motion to dismiss the action at the conclusion of the evidence, on the ground of defect of parties, does not, as a general rule, properly raise the question for review on appeal.

2.  PARTIES—Defect of—How Raised—Waiver. The question of a defect of parties plaintiff must be raised by demurrer, if the defect appears on the face of the petition; if it does not so appear, it should be raised by answer; and, if no objection be taken by either demurrer or answer, the defendant will as a general rule be deemed to have waived the same.

3.  BROKERS—Commissions—Action—Evidence—Question for Jury. In a suit for commission by a real estate broker for an alleged sale of certain town lots where the alleged contract of sale consists entirely of letters, telegrams, and telephone conversations, concerning which there is no conflict in the evidence, but wherein the material question to be decided is as to whether or not there was a complete meeting of the minds of the parties on the terms of the proposed sale, and where it is shown by the evidence that, after the letters and telegrams had passed between the parties, the parties met, as proposed in the correspondence, to close the trade, and certain conversation occurred between them, which tended to throw light on the intention of the parties relative to the letters and telegrams, and concerning which conversations

Culbertson v. Mann.

there is conflict in the evidence, held, that the question was a proper one to submit to the jury.

(Syllabus by Brewer, C.)

*Error from District Court, Muskogee County; John H. King, Judge.*

Action by Stephen P. Mann against J. J. Culbertson. Judgment for plaintiff, and defendant brings error. Affirmed.

*Gibson & Thurman,* for plaintiff in error.

*Hutchings, Murphey & German,* for defendant in error.

Opinion by BREWER, C. The defendant in error, hereafter called plaintiff, brought suit against the plaintiff in error, hereafter called defendant, in the United States Court for the Western District of Indian Territory, sitting at Muskogee, on the 26th day of February, 1907. After answer filed and issue joined, it was tried to a jury in the district court of Muskogee county on the 19th day of March, 1909. The jury returned a verdict in favor of the plaintiff below, Mann, and the court rendered judgment thereon.

This is a suit to recover a commission on an alleged sale of certain property owned by defendant in Muskogee. It appears that in 1906 the defendant owned lots 4 and 5 of block 6 in the original city of Muskogee; that plaintiff was at that time a real estate agent or broker; that plaintiff had an offer for defendant's property, and opened negotiations with defendant by mail concerning the proposed sale; that certain letters, telegrams, and one or more conversations over the telephone occurred between them. On the strength of this correspondence the plaintiff claims that he procured a purchaser for defendant's property, who was able, willing, and ready to buy same, upon terms agreeable to defendant, and that he closed the deal, and received a deposit of earnest money to bind the bargain, and that defendant then refused to close the deal and convey the property. Plaintiff claims his fee, or commission, was stipulated and agreed on in the negotiations, and that having earned the same, and the defendant

being wholly responsible for the failure of the deal, he is entitled to his commission. The defendant claims that the correspondence, telegrams, and telephone communications between the parties were merely preliminary negotiations, and did not amount to a contract under which plaintiff procured a purchaser at a price and upon terms the defendant had agreed to accept. That there was, therefore, no contract between them, and that nothing was due the plaintiff. This states substantially the contentions of the parties, and the issues as made up and tried by the jury.

To sustain his contentions the plaintiff called several witnesses, testified himself as to certain telephone conversations between himself and defendant, and with regard to a certain conversation with defendant a day or two after the date of the alleged closing of the deal. He then introduced the letters and telegrams passing between the parties. The defendant testified orally giving his version of the conversation had with plaintiff a day or two after the alleged closing of the deal.

At the conclusion of the testimony, the defendant, in the absence of the jury, moved the court to instruct the jury peremptorily to return a verdict for defendant:

"First. Because the proof introduced and submitted to the jury shows that no contract was entered into by and between the plaintiff and defendant upon which the plaintiff could recover the amount sued for by him. Second. For the further reason that the proof introduced shows that there is a defect of parties plaintiff in this action; that the plaintiff is not the only one interested in the right of action upon which this suit is based; and that he cannot maintain this action in his individual name."

This motion was overruled by the court, to which action of the court the defendant took his exceptions. The plaintiff then by agreement of counsel, and the permission of the court, introduced U. L. Jackson, who gave evidence tending to show an equitable assignment and transfer of any rights he may have had in the subject of the litigation to the plaintiff, and disclaimed any interest whatever therein. The defendant then moved the court to dismiss the cause for the reason that the evidence shows that there is a defect of parties plaintiff.

The allegations of error, and the reasons urged for the reversal of this case, are predicated on the motion of defendant to dismiss the cause on account of a defect in the parties plaintiff, and his request to direct a verdict for defendant, both of which were refused.

We will consider the propositions in their order. Was it error in the court to refuse to dismiss this cause for defect of parties after all the evidence was in? Or had the defendant waived the matter, in not having called the attention of the court to the same, by demurrer to the complaint, or by his answer? Under our view of this question, a consideration of the above question will dispose of this point, without discussing whether or not there was, in fact, a defect of parties plaintiff, and in thus considering it we assume without deciding that there was.

The statutes of Arkansas in force when this suit was brought, relating to this matter read:

Mansf. Dig. (Ark.), section 5028 (Ind T. Ann. St. 1899, sec. 3233): "The defendant may demur to the complaint. * * * 4. That there is a defect of parties, plaintiff or defendant. * * *"

Mansf. Dig. (Ark.), section 5031 (Ind. T. Ann. St. 1899, sec. 3236):

"When any of the matters enumerated in section 5028 do not appear upon the face of the complaint, the objection may be taken by answer. If no such objection is taken, either by demurrer or answer, the defendant shall be deemed to have waived the cause, except only the objection to the jurisdiction of the court over the subject of the action, and the objection that the complaint does not state facts sufficient to constitute a cause of action."

The statutes of Oklahoma in force at the time of trial read:

Comp. Laws 1909, sec. 5629: "The defendant may demur to the petition, etc. * * * 4. That there is a defect of parties, plaintiff or defendant. * * *"

Comp. Laws 1909, sec. 5631:

"When any of the defects enumerated in section 5629 do not appear upon the face of the petition, the objection may be taken by answer; and if no objection be taken either by demurrer or answer, the defendant shall be deemed to have waived the same,

except only the objection to the jurisdiction of the court, and that the petition does not state facts sufficient to constitute a cause of action."

Under the above sections of the statutes, requiring the question of defect of parties to be raised by demurrer to the petition, or by answer, it has been often held, when the question was not so raised, that the party had waived same, and could take no advantage of it on appeal. It has been so held in this court in *K. C., M. & O. Ry. Co. v. Shutt,* 24 Okla. 96, 104 Pac. 51, 138 Am. St. Rep. 870; also in *Choctaw, O. & G. R. Co. v. Burgess et al.,* 21 Okla. 653, 97 Pac. 271. In the last-cited case it is said:

"A general demurrer does not raise the question of defect of parties. Same must be taken advantage of by special demurrer or answer, and as a general rule, when not so done, cannot be raised on appeal.

"A party desiring to take advantage of a defect or of misjoinder or an excess of parties plaintiff must promptly interpose an objection in the manner provided by law, and, failing to do so, he will not be permitted to speculate upon a favorable verdict, and when afterwards he is disappointed by an adverse finding of the jury, be allowed to raise such question either in a motion for a new trial or in the appellate court."

To sustain the doctrine of the case cited, *supra,* the court cited: *Eagle et al. v. Beard et al.,* 33 Ark. 501; *Yonley v. Thompson,* 30 Ark. 401; *Molen et ux. v. Orr,* 44 Ark. 488; *Bevens v. Barnett* (Ark.) 22 S. W. 160; *Clark v. Gramling,* 54 Ark. 526, 16 S. W. 475; *Bailey v. Rockafellow,* 57 Ark. 219, 21 S. W. 227; *Long v. De Bevois,* 31 Ark. 480; *Coulson v. Wing,* 42 Kan. 508, 22 Pac. 570, 16 Am. St. Rep. 503; *Seip v. Tilghman,* 23 Kan. 290; *Chicago & Atchison Bridge Co. v. Fowler,* 55 Kan. 17, 39 Pac. 727; *Foster v. Bd. County Commissioners,* 63 Kan. 43, 64 Kan. 1037; *First Nat. Bank v. Hamor,* 1 C. C. A. 153, 49 Fed. 45, 7 U. S. App. 69.

It will be observed that in the quotation from *Choctaw, O. & G. R. Co. v. Burgess, supra,* it is stated that: "It is the general rule that a defect of parties must be taken advantage of," etc. This of course implies that there may arise a condition that would relax the rule and form an exception to it. There seems

to be authority creating an exception to this general rule.    In *Railway Co. v. Hucklebridge,* 62 Kan. 512, 64 Pac. 58, by a divided court, four to three (Chief Justice Doster and Justices Cunningham and Ellis dissenting), it was held in the majority opinion:

"The Civil Code, etc.,    *    *    *    which requires defects in petitions other than those which appear on their face and other than those of jurisdiction etc.,    *    *    *    to be set up in answer, does not apply to a petition by a partner who conceals the fact of partnership, and wrongfully brings suit in his own name for an injury to the partnership property.    In such cases the defendant, if ignorant of the partnership until disclosed upon the trial, may then raise the objection without amendment of his answer."

In the above case just quoted from, the objection was raised, as in the case at bar, by demurrer to the evidence, and request for instructions.    But this court in *Choctaw, O. & G. R. Co. v. Burgess, supra,* after careful consideration of the Hucklebridge case, *supra,* failed to adopt the rule announced therein, but left it an open question.    In the syllabus appears the following:

"*Quaere,* as to whether or not the question of defect of parties, or misjoinder or excess of parties, when neither such appears from the face of the petition nor is known to the defendant until disclosed at the trial, in the examination of witnesses, can be raised then by proper objection to the introduction of evidence, or upon requested instructions, is not determined so far as the procedure in force in this state."

Neither is it required to be determined in this case.    In our judgment the facts in this case fail to bring it within the rule of the Hucklebridge case, should it ever be considered advisable to adopt that rule in this state.

In the case at bar, the defendant was well aware of his negotiations, letters, telegrams, telephonic and other conversations with plaintiff, in some of which the name of U. L. Jackson also appeared.    They extended over the period from December 6 to December 17, 1906; were concerning the sale of lots 4 and 5 of block 6 in Muskogee, in which the exact amount of commission sued for was discussed.    The defendant was as well aware of what had occurred as was the plaintiff.    When plaintiff, in scarce-

ly more than two months thereafter, sued him for the exact amount of commission discussed, on account of an alleged sale of the identical property mentioned in, and upon a contract alleged to have been made at the exact time of the negotiation, defendant cannot assert that when he answered in the case, that he was ignorant of any of the facts and circumstances upon which the suit was based, in so far as the question goes of whether or not he had breached an actionable contract. If there was a contract concerning the sale of these lots that he ought to have lived up to, and Mr. Jackson was interested in the commission growing out of it, the defendant was as fully advised of this fact, and of such joint interest, and therefore of the defect of parties, when he answered plaintiff's petition as he ever became during the progress of the trial. And having this full knowledge, and being in no wise misled as to the basis of plaintiff's claim, there is no good reason why the provisions of the statute should not have been complied with, and not having raised the question of defect of parties in his answer, in the words of the statute, and under an almost unbroken line of decisions construing the same, he is deemed to have waived the question.

Second. The question as to whether or not the court erred in overruling defendant's motion for an instructed verdict in his favor requires an examination of the evidence. The plaintiff was a real estate broker in Muskogee. The defendant lived in Texas, and owned lots 4 and 5 of block 6 in Muskogee, Okla. U. L. Jackson lived in Muskogee, and for two or three years had been acting as defendant's agent in collecting his rents. Plaintiff when the negotiations began was not acquainted with defendant. Early in December, 1906, plaintiff had a customer who wanted to buy defendant's lots, and made a proposition to plaintiff to be submitted to defendant. On December 6, 1906, this proposition was submitted to defendant, by mail; the letter briefly stated was:

"I have an offer for your lot and building on Broadway, Muskogee, I. T., of forty thousand dollars ($40,000.00) on the following terms: Five thousand dollars ($5,000.00) cash, five thousand dollars on or before twelve months" (the remainder

of price to be paid in yearly installments of $5,000 every 12 months) "and deferred payments to draw 8% interest from date."

Then follow details of the proposition and method of carrying it out at great length, information as to the reliability of the purchasers, etc. In the letter this clause appears:

"Your agent, Mr. U. L. Jackson, is advised of this offer to you and joins me in the deal." "Our commission in a transaction of this kind would be ($1,100.00), but we have talked the matter over and decided to say to you that we would be willing to take ($1,000.00), and if it would be any inducement to you we would be willing to take ($500.00) when the deal was closed, and ($500.00) when the first note was paid, the deferred payment to bear 8% interest."

This letter was signed S. P. Mann and U. L. Jackson.

On the 9th of December, 1906, it is shown by the oral proof the defendant called up U. L. Jackson, asked him about the deal proposed in the letter of the 6th of December, talked the proposition over at length, and was advised by Mr. Jackson that he (Jackson) thought it a good deal. Defendant asked Jackson to see if he could get a little more cash paid on the deal, and was told by Mr. Jackson that the matter would be taken up next morning, with Mr. Mann (plaintiff). Next day the following telegram was sent:

"To J. J. Culbertson, care Robert Gibson, Dallas, Tex. Saw parties. Say can't pay more down. Will have to spend considerable first year to make investment pay. Can close an offer submitted if closed at once. Answer. U. L. Jackson."

On the same day defendant replied:

"Dallas, Tex. Dec. 10th, 1906, U. L. Jackson, Muskogee, I. T. Telegram received. Accept offer as per letter confirm sale to me at Waxahachie. J. J. Culbertson."

The plaintiff then went and interviewed the purchasers, and learned that the bank financing the deal was not willing for purchasers to pay more than 6 per cent. interest on the deferred payments of the purchase price, but would close the deal on the terms submitted in the letter of December 6, 1906, with the one exception—that the interest on deferred payments bear 6 per cent. per annum instead of 8 per cent. as mentioned in the orig-

inal proposition that had been accepted. On this same day, December 10, 1906, a contract of sale was drawn up at length covering every phase of the proposition first submitted, except in it the interest was changed from 8 to 6 per cent. This contract was signed by the purchaser and by U. L. Jackson as "Authorized Agent" and was witnessed by S. P. Mann; but at the bottom had this indorsement: "This contract is, however, subject to the approval of J. J. Culbertson." This contract was mailed to defendant probably on December 10, 1906, and plaintiff testifies he notified defendant by wire. The next step was a telegram from defendant as follows: "Temple, Texas, December 12th, 1906. S. P. Mann, Muskogee, I. T. Impossible to phone. Wire here status of matter. Use postal. J. J. Culbertson."

After receipt of the above telegram, plaintiff testified that defendant called him on telephone from Temple, Tex., December 12, 1906, and inquired about the trade. In this talk it was explained fully that the purchasers could not pay 8 per cent. as originally proposed, but would carry out the exact terms of the proposition of December 6th, except as to the interest, and that all they could pay was 6 per cent. That, on hearing this, defendant suggested that plaintiff see the parties and try to get 7 per cent. interest. Defendant was told that this would be an impossibility; that the backers of purchasers would not stand for it. It was then proposed that plaintiff try to get purchasers to pay one year's interest in advance upon the basis of 6 per cent. as proposed by them, and defendant said if they would do that it would be satisfactory. Plaintiff then testifies that he asked defendant to give him discretionary power, if they would not pay the year's interest in advance, to close the deal at 6 per cent., and defendant told him to see the parties first and then let him know. After this conversation on telephone defendant wired plaintiff: "Dallas, Texas, Dec. 14, 1906, S. P. Mann, Muskogee, I. T. Wire me at Paris today about trade, due there tonight. J. J. Culbertson." After receiving last telegram and seeing the parties, and failing to get them to agree to pay one year's in-

Culbertson v. Mann.

terest in advance, plaintiff wired defendant as follows: "December 14th, 1906. To J. J. Culbertson, Paris, Texas. Six per cent. best can do on contract submitted. One thousand up. Answer. S. P. Mann." To this defendant replied: "Paris, Texas, Dec. 15-06. Telegram received. Coming up Monday to close trade. J. J. Culbertson."

On the same day, December 15, 1906, defendant wrote the following letter to U. L. Jackson which was handed plaintiff:

"Dear Sir: I had a talk with Mr. Mann while in Temple, and he stated that the best that could be done was to make the rate 6 per cent. instead of 8 per cent., but said that he would try and get the first year's interest with the cash payment, etc., * * * and would let us know at Temple. I did not hear from him, and then left for Waco, and left orders to forward any telegrams. I found upon my return from South a contract sent to Dallas that he did not succeed, but had up a thousand dollars to close at 6 per cent. straight. I wired today that I would come up to Muskogee on Monday to close the trade. I will start so as to reach there about 4:00 p. m. As to com. of $1,000.00 I will pay the $500.00 cash if everything is right and give note for $500.00 with 6 per cent. int. Yours truly, J. J. Culbertson."

The evidence shows that the defendant did appear in Muskogee about the 17th of December as he had stated in his letter and telegram. The plaintiff testifies he saw him at the office of U. L. Jackson, and that they had considerable conversation; that Mr. Jackson gave defendant the certified check for $1,000, purchasers had deposited as earnest money; that it was payable to either Mr. Jackson, as agent, or to the defendant direct; that defendant said he would close the deal up Friday—that three or four days would not make any difference, etc.; that he made a date with defendant to meet him later in the day but could not find him, etc.; that he went to defendant's hotel repeatedly that day, but could not find defendant. Mr. Jackson testified that about the 16th or 17th of December when the defendant came up to Muskogee they talked over the sale and that he told defendant the deal had been closed and a certified check was up, etc. The defendant testifies concerning the meeting with Jackson and

Mann on December 17th, and there was considerable conflict in his statement and that of plaintiff's. Several other letters passed between the parties after defendant went home, and failed to close the deal, but the rights of the parties, whatever they were, had become fixed, and they throw no special light on the subject.

The question to be determined is, Is there sufficient evidence in the case to support the verdict of the jury? If so, the refusal of the trial court to direct a verdict for defendant was proper; if not, it was reversible error. Does the evidence show that the plaintiff procured a purchaser of defendant's property who was able, ready, and willing to buy the property, upon terms agreed to by defendant? And, if so, was the amount of the commission sued for and recovered agreed upon between the parties? That the proposition of sale made by plaintiff to defendant by letter of December 6th, wherein the rate of interest on deferred payments was named at 8 per cent. was fully accepted by defendant's telegram of December 10th, is admitted by all. But the purchasers did not close the trade on this acceptance, but offered to close it upon the same terms, except as to the interest on deferred payments, which they proposed to change from 8 per cent. to 6 per cent. Does the evidence of the further negotiations show that the defendant accepted the proposition thus modified? Bearing in mind the nature of the negotiations up to this point, it is necessary to consider carefully what followed between these parties, relative to the new proposal. This new proposal following the exact terms of the original one, except as to rate of interest was sent to defendant in the form of a written contract signed by the purchasers, and U. L. Jackson, "Authorized Agent," but stated that it was subject to the approval of defendant. This was mailed defendant, probably on December 10th. On December 12th, and before defendant had received the modified contract, defendant wired to plaintiff to learn the status of the trade. On receipt of this message plaintiff talked over the telephone with the defendant explaining the new proposal as to the change of interest rate. Defendant then suggested that, if the purchasers would pay one year's interest in advance, the contract would be satis-

factory at 6 per cent. as proposed. Plaintiff asked for discretionary power, but defendant replied: "Well, see them, and let me know." After this conversation between the parties over the telephone, plaintiff saw the purchasers, and they would not consent to pay the one year's interest in advance; before communicating this information to defendant plaintiff received a telegram from defendant December 14th: "Wire me at Paris today about trade," etc. Plaintiff answered: "Six per cent. best can do on contract. One thousand up, answer." To this, December 15th, defendant replied: "Telegram received. Coming up Monday to close trade:"

The defendant on the same day, December 15th, wrote U. L. Jackson the letter set out above in full, in which he referred to the talk with plaintiff over the telephone that he was advised that 6 per cent. was the best that could be obtained; that purchasers would not pay first year's interest in advance; that $1,000 was up to close at 6 per cent. straight, then adds: "I wired today that I would come up to Muskogee Monday to close trade. As to commission of $1,000.00, I will pay the $500.00 cash if everything is right and give note for $500.00 with 6%."

Defendant visited Muskogee on Monday as he had agreed, and plaintiff and U. L. Jackson had a conversation with him regarding which all three testified, and as to what was said and done at this meeting the evidence is in conflict. This states substantially all the material evidence, and it only remains to form a correct conclusion from it, as to whether the negotiations amounted to an acceptance of the terms of the new proposal of sale brought about by plaintiff—whether it is sufficient to support the verdict of the jury. We have weighed and considered it with care, and are of the opinion that it is. The defendant had full information in the minutest detail of the proposed sale. He had in his possession the contract in writing, identical in terms with the first proposition that he had accepted, except as to the rate of interest, he haggled over the rate of interest, and, failing to get 8 per cent., he tried to get 7 per cent., and, failing in this, he would take 6 per cent. if one year's interest was paid in advance. He told plaintiff to try to get the advance payment of

interest and let him know.   He was informed this could not be done; that $1,000 was in the hands of plaintiff as earnest money to close the deal at 6 per cent. straight.   He wired: "Coming up Monday to close trade."   After wiring thus he wrote as above shown, confirming his wire, admitting detailed information as to exact status of the trade; and we think it is very significant that in this letter he was careful to mention the amount of the commission stipulated that the deferred part of the commission should only bear 6 per cent.   It is apparent that this was with the idea that the interest he was to pay on the deferred portion of the commission should harmonize with the interest he was to receive on deferred payments of purchase price.   The original proposition provided that defendant would pay 8 per cent. on any part of the commission not paid in cash.

We are not unmindful of the rule of law, as announced by this court, in *American Jobbing Ass'n v. James,* 24 Okla. 460, 103 Pac. 670:

"Where the transaction between two parties consists entirely of letters and telegrams, it is for the court to determine whether such correspondence constitutes a contract," etc.

But in this case the most material point in the whole matter is whether or not there was a meeting of the minds of the parties, and there was conflict in the oral testimony of the witnesses bearing upon this issue, and we are of the opinion that it was not error to submit the proof to the jury.   But as the oral proof, in which conflict appears, is meager, and as there might be differences of opinion regarding it, we are of the opinion that, independent of this proof, the letters, telegrams, and telephonic conversations, about which there is no conflict, were sufficient in themselves to have justified the court below in holding that there was a meeting of the minds of the parties as to the terms of the proposed sale, and that the amount of the commission was agreed upon, and that the same had been earned by the plaintiff.

Finding no error in the proceeding, the judgment of the trial court ought to be affirmed.

By the Court:   It is so ordered.

All the Justices concur.