[No. 10391.    Department Two.    September 3, 1912.]

HALLIDIE COMPANY, *Respondent*, v. WASHINGTON BRICK, LIME & MANUFACTURING COMPANY et al., *Appellants*.[1]

APPEAL—PRESERVATION OF GROUNDS—EXCEPTIONS—SUFFICIENCY. General exceptions to findings of fact, stated to the judge at the time of filing the findings, noted by the judge at the foot of the findings specifying the findings excepted to by number, are sufficient to obtain a review of the findings; and in the absence of any showing to the contrary, it will be presumed that the notation of the exceptions was made by the judge.

SAME—NECESSITY OF EXCEPTIONS. Exceptions to the conclusions of law or to the judgment are not necessary to obtain a review of the findings and judgment.

COURTS—DECISIONS—STARE DECISIS. A settled construction of statutes respecting practice will not be departed from unless the gravest necessity exists therefor.

SALES—BREACH OF GUARANTY—DAMAGES—DEFENSES. The purchaser of a guaranteed engine and boiler cannot offset against the price losses incurred in its business while attempting to use it with a boiler capacity that was insufficient to generate sufficient steam to operate the engine to its guaranteed capacity, where the manufacturer was not responsible for the insufficient boiler capacity; nor where the same was accepted after remedying the defect by increasing the boiler capacity, and it was not shown that the losses were suffered solely by the failure of the vendor to furnish an engine complying with the guaranty within the time fixed by the contract.

APPEAL—REVIEW—FINDINGS—PLEADING AND PROOF. A finding that a corporation purchasing a business of another assumed all obligations incurred in the business cannot be predicated alone on allegations that were denied, there being no evidence on the subject.

COSTS—ON APPEAL—PARTIAL REVERSAL. On reversing a judgment as to one defendant and affirming as to another, where there was no segregation of the appeals, plaintiff will recover one-half of its costs, and pay to the successful defendant one-half of the appellant's costs.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered November 2, 1911, upon findings in favor of the plaintiff, after a trial on the merits

[1]Reported in 126 Pac. 96.

before the court without a jury, in an action on contract.
Affirmed in part and reversed in part.

*Charles P. Lund,* for appellants.
*Graves, Kizer & Graves,* for respondent.

FULLERTON, J.—On October 22, 1908, the Hallidie Machinery Company entered into an agreement in writing with the Washington Brick, Lime and Manufacturing Company, by the terms of which it agreed to sell and deliver to the manufacturing company a 72x18 high pressure Eric City boiler and a 14x30 rolling mill type Corliss engine, with certain enumerated fixtures, for a consideration of $4,840.62. By the terms of the sale the seller guaranteed that the engine, when running at a speed of 110 revolutions per minute at about one quarter cut off, under a steam pressure of 150 pounds, would develop 252 indicated horse power. The machinery was furnished and installed as agreed upon, and the purchaser made payments on the purchase price thereof aggregating $2,090.90. The manufacturing company was engaged in the manufacture of brick and had extensive machinery for that purpose which the boiler and engine were intended to operate, but it was found, after ample trial, that they would not develop sufficient power to operate it to its capacity, and complaint thereof was made to the seller to that effect. The manufacturing company contended that the fault lay with the engine; that it would not develop 252 indicated horse power when operated under the conditions and to the capacity set forth in the contract of sale. Experts were sent to examine the engine, and several changes were made in the feed and exhaust valves, but it was found impossible to make it operate the purchaser's brick machinery to its full capacity. The experts thereupon made tests of the engine to ascertain whether its actual capacity was equal to its rated and guaranteed capacity. These experts differed as to results. Those employed by the seller finding that it would develop an indicated horse power in excess of

the guaranteed horse power, while those employed by the purchaser were unable to make it show that amount of power. All of the experts agreed, however, that the boiler generating the steam supply was insufficient in capacity to furnish steam sufficient to operate the engine up to 252 indicated horse power; their testimony being to the effect that it requires a boiler of greater capacity than 150 horse power to serve an engine of 252 horse power.

Subsequent to the tests, further negotiations were had between the parties without result. Finally, on June 4, 1909, the seller wrote the purchaser the following letter:

"Spokane, Wash. June 4, 1909.
"Mr. Jos. H. Spear,
   "Pres. and Gen. Mgr., Wash. Brick & Lime
      "Mfg. Co.,
         "City.
"Dear Sir: Confirming our conversation with you this morning about your Murray Corliss engine at Freeman, wish to say that we will hereby offer you the following concession, as we wish to dispose of this matter to your entire satisfaction.

"We will furnish and install, at our expense, a 15-inch diameter cylinder and piston to take the place of the 14-inch size now in use on the engine, which 14-inch cylinder is to be returned to us.

"In doing this, we wish you to clearly understand that this is a concession on our part as a matter of policy because we want your good will and future business, and future business for Murray Iron Works in this territory, and this change is not made because the engine will not deliver the horse-power named in the contract. The engine which we furnished you will unquestionably deliver the contract power under proper conditions, and in furnishing you a 15-inch cylinder we are giving you a reserve of power beyond that contracted for.

"Trusting that this will close this matter satisfactorily to you, we are
                "Very truly yours,
                    "Hallidie Machinery Company,
                       "B. B. Truett, Local Manager."

To this letter, the purchaser replied as follows:

"Spokane, Wash., June 5th, 1909.
"Mr. B. B. Truett, Local Manager,
  "Hallidie Machinery Co.,
    "Spokane, Wash.

"Dear Sir: Replying to your favor of the 4th inst, we note your proposition to install at your expense a 15-inch diameter cylinder and piston to take the place of the 14-inch size now in use on the engine at Freeman. Recalling the terms of your contract, we do not think this is a question for us to pass upon. Under the terms of the contract you have the right to make good, if possible, anything that may be wrong with the engine, and it was for this purpose that we advised you after starting the machinery that the engine was not meeting the conditions of your contract. We have waited patiently something over three months for you to ascertain and correct whatever the trouble might be so as to deliver to use the power that your contract covered. If the 15-inch diameter cylinder and piston which you propose to put in will do this, it is satisfactory to us, but we are not willing to name in advance that the placing of a 15-inch cylinder will be satisfactory to us. We want to see the results of same, and we do not waive any of our rights under the contract. We have waited very patiently for ninety days, and have been working under great difficulties, with a lessened output and a high fuel expense in order to operate and fill the contracts as nearly as possible that we had assumed.

"Anything that you do to remedy the evils now existing in connection with this engine, we would like you to do as quickly as possible, and if after these changes are made the engine will give us the 250 h. p. named in your contract on an economical fuel basis, we will be pleased to accept same, but I am not an expert, and I do not wish in advance to commit myself or waive any of the rights that this company may have in connection with the contract made with you for supplying this power.

"Yours respectfully,
"Washington Brick, Lime & Mfg. Co.
"By Jos. H. Spear."

Subsequently the seller installed a new cylinder in the engine—making it at the request of the purchaser a 16-inch diameter cylinder instead of a 15-inch—which on the installation by the purchaser of an increased boiler capacity, operated to the purchaser's satisfaction.

This action was brought to recover the balance unpaid on the contract price of the engine and boiler. The plaintiff alleged that, subsequent to the sale of the boiler and engine, the Hallidie Machinery Company transferred and assigned to the plaintiff its business, good will and all of its assets, which included the account against the purchaser of the boiler and engine. It alleged further that, subsequent to entering into the contract, the defendant Washington Brick, Lime & Sewer Pipe Company purchased the business, good will and all of the assets of the defendant Washington Brick, Lime & Manufacturing Company, and assumed and agreed to pay all of the indebtedness of the latter company, including the indebtedness due on account of the purchase of the boiler and engine in question. The defendants filed separate answers. The Washington Brick, Lime & Sewer Pipe Company admitted that it had purchased the business, assets and good will of the Washington Brick, Lime & Manufacturing Company subsequent to the time that the contract sued upon had been entered into, but denied each and every other allegation of the complaint.

The Washington Brick, Lime & Manufacturing Company admitted the allegations of the complaint to the effect that the plaintiff was the successor in interest of the Hallidie Machinery Company and the owner of the account sued upon; also, that it had sold and transferred to its codefendant, Washington Brick, Lime & Sewer Pipe Company, its business, good will, and assets, but denied that the latter company had assumed or agreed to pay any of its obligations. For an affirmative defense, set-off and counterclaim, it alleged a breach of the contract of sale entered into between itself and the Hallidie Machinery Company; it alleged that

the engine furnished it under the contract of sale was not
of the power guaranteed by the seller, and because thereof
it had been unable to operate its brick machinery to the ca-
pacity it would have been able to operate it had the engine
been of the power guaranteed; that because it could not
operate its brick machinery to its full capacity, it had been
unable to fulfill the contracts it had actually entered into
for supplying brick, and had been unable to enter into other
similar contracts offered it, to its loss and damage in a sum
in an excess of the balance unpaid upon the cost price of the
engine and boiler.

The action was tried by the court sitting without a jury.
The court found that there remained unpaid on account of
the sale of the machinery described the sum of $2,750.42. It
found also that, subsequent to the sale, the defendant Wash-
ington Brick, Lime & Sewer Pipe Company purchased the
bulk of the business, the good will and assets of the defend-
ant Washington Brick, Lime & Manufacturing Company,
including the goods, wares, and merchandise sold to its co-
defendant by the plaintiff's predecessor in interest, and that
it assumed the indebtedness and liabilities incurred thereby
by such codefendant. It also found that the boiler by which
the engine purchased was attempted to be operated was in-
sufficient in capacity for that purpose, "that in order to
operate said engine under a continuous pressure of one hun-
dred and fifty pounds at the throttle and develop therein
two hundred and fifty-two indicated horse power with a
speed of one hundred ten revolutions at about one-fourth
cut-off, it would be necessary to have a boiler large enough
to furnish approximately seventy-five hundred pounds of
steam per hour, and that the capacity of one hundred and
fifty horse power boiler under normal conditions is approxi-
mately fifty one hundred seventy-five pounds of steam per
hour." It also found that the proposal contained in the
letter of the seller to the purchaser, the acceptance of the
conditions thereof by the purchaser, and the subsequent in-

stallation pursuant thereto of a new cylinder by the seller, operated to estop the purchaser from contending that there had been a breach of the contract of sale. The court refused, however, to find on the question whether the engine would develop under the conditions defined in the contract of sale the indicated horse power therein guaranteed, reciting in its written findings that the evidence was not sufficiently clear to enable it to make a finding in that behalf, reciting further that such a finding was unnecessary in view of the finding concerning the estoppel. Judgment was entered against both of the defendants for the sum demanded in the complaint. This appeal followed.

The respondent contends that the judgment appealed from is not subject to review in this court because of the insufficiency of the exceptions taken to the findings and judgment. The exceptions were noted at the foot of the written findings, and recite that the defendants and each of them except to certain of the findings which are specified by their numbers. The statute prescribes two methods of taking exceptions. One is by stating to the judge at the time the findings are signed the exceptions desired to be taken, and the other is by filing written exceptions to the findings within five days after the filing of the same. If the exceptions are taken at the time the findings are made, it is provided that the "judge . . . shall note the exceptions in the margin or at the foot of the report or decision." The objection to the present exception is two-fold. It is said that they were not taken in the form prescribed by the statute, and if properly taken are too general. It does not appear from the record by whom the exceptions were noted at the foot of the findings. But the presumption is in favor of regularity, and in the absence of a showing to the contrary, it will be presumed that the notation was made by the judge or by his order and direction, when such a presumption is necessary to sustain the validity of the exception. Allowing this presumption, the exceptions are sufficiently regular. The ques-

tion of their generality is determined contrary to the respondent's contention in the case of *Prince v. Prince*, 64 Wash. 552, 117 Pac. 255. In that case we said:

"Respondent has moved to dismiss this appeal, for the reason that appellant has entered his exceptions to each one of the findings of fact, saying that he excepts to the specified finding for the reason that the same is not supported by the evidence and is contrary to the law. It is said that these are general exceptions, and that they come within the rule of that line of cases beginning with *Hannegan v. Roth*, 12 Wash. 65, 40 Pac. 636, holding that a general exception is insufficient, and that the court will not, under such circumstances, inquire beyond the sufficiency of the findings of fact to sustain the decree. We do not agree with counsel. It has never been the purpose or the policy of the court to hold anything other than that exceptions should be in such form as to indicate to the court the errors relied upon on appeal. An exception may not be taken if directed to all of the findings, but it may be in the same form and directed to a particular finding and meet the requirement of the rule. If the rule were not so, it would be incumbent upon us to define a form for exceptions, and clearly this would be beyond the proper function of this court."

It is also objected that there are no exceptions to the conclusions of law or to the judgment. It is conceded that this court has heretofore held that such exceptions are unnecessary in order to obtain a review of the findings and judgment, but it is argued that the holding is contrary to the statute. But whether this holding is so contrary or not we do not feel at liberty to now inquire. The proper construction of the statute is at least debatable, and to put a different construction upon it from that heretofore prevailing would not only operate injuriously upon the present appellants who have relied upon our former holdings, but also upon other litigants who have likewise relied thereon. Radical changes in the practice respecting appeals operate less injuriously to parties litigant when made by the legislature than when made by the court, and we feel that a settled con-

struction of such a statute ought not be departed from unless the gravest necessity exists therefor. No such necessity exists in this instance.

On the merits of the controversy we think the findings of the court are in the main correct. In the first place, it seems clear that, under the circumstances shown here, the appellant who purchased the engine and boiler cannot charge its losses, caused by want of sufficient motive power to operate its machinery, to the vendor of the engine, even conceding the engine to have been defective. As we have elsewhere said, it was the testimony of all of the experts, both those called by the appellant as well as those called by the respondent, that a boiler of the power of one here used would not generate sufficient steam to operate to its full capacity an engine capable of producing 252 indicated horse power, and they are all likewise agreed that this particular boiler would not generate sufficient steam to operate this particular engine to its full capacity. The appellant's losses were, therefore, caused in part at least for want of sufficient boiler capacity, and since this was not the fault of the respondent, it cannot be held for such losses; not for the whole, because it was not the cause of the whole of such losses, nor for the part, because there is no measure by which the part can be determined. In the second place, it seems equally clear that the appellant obligated itself to pay for the engine when it accepted it after it had been repaired by changing the cylinder. Had it suffered losses caused solely by the failure of the vendor to furnish the engine complying with the guaranty within the time fixed in the contract, it could, of course, offset these losses against the purchase price, but it has failed to prove that the losses suffered by it were thus caused, and hence the court committed no error in rendering judgment against it for the purchase price without deducting the losses.

But we think the court in error in holding that the corporation purchasing the business, good will, and assets of

the obligated corporation is also liable.  No evidence was offered by either party concerning this sale.  All that appears in the record is contained in the pleadings.  As these stand, there is clearly nothing to show an assumption by the purchasing corporation of the debts of the selling corporation, either in fact or by operation of law.  There is merely an allegation on the one side and a denial on the other that such an assumption was made.  This is insufficient upon which to base an affirmative finding that the fact exists.

The judgment appealed from is reversed and remanded as to the defendant Washington Brick, Lime & Sewer Pipe Company with instructions to dismiss the action as to it.  In all other respects it will stand affirmed.  The successful appellant, since there was no segregation of the appeals, will recover one-half of the costs expended by both appellants in perfecting the appeal.  The respondent will recover of the unsuccessful appellant one-half of its costs expended on this appeal.  Costs in the court below will be apportioned by the trial judge.

MOUNT, MORRIS, ELLIS, and CROW, JJ., concur.