## Richmond.

AMERICAN RAILWAY EXPRESS COMPANY V. J. W. DOWNING.

March 16, 1922.

Absent, West, J.

1. CORPORATIONS—*Consolidation—Liability of Consolidated Company for Debts and Claims Against Original Corporations—Case at Bar.*—In the instant case, defendant, the American Railway Express Company, was formed by the consolidation of the Adams Express Company with other existing express companies. Defendant company took over the entire business of the Adams Express Company as a going concern and all of the tangible property of the latter theretofore used in the business. The entire existence of the Adams Express Company as a going concern was consolidated or merged in the defendant. The liability of the Adams Express Company to the plaintiff existed at the time of such consolidation or merger, and was actually or constructively known to the defendant to so exist. The property of the Adams Express Company so taken over by defendant company was more than sufficient to pay the liability, and defendant company did not undertake to pay anything for such property except its own capital stock. After the consolidation the Adams Express Company did own some property located elsewhere than in Virginia, and although it transacted no business other than that of winding up its affairs, it maintained an office in New York city, with its official organization intact.

   *Held:* That defendant company was answerable to the plaintiff for the liability of the Adams Express Company to the plaintiff which existed at the time of the consolidation.

2. CORPORATIONS—*Consolidation—Liability of Consolidated Company for Debts and Claims Against Original Corporations.*—When two or more corporations are consolidated into a new corporation with a new name, and the constituent corporations go out of existence, if no arrangements are made respecting their property and liabilities, the consolidated corporation will be answerable for their liabilities, at least to the extent of the property acquired from the constituent corporation whose liability is sought to be enforced against the consolidated corporation.

3. CORPORATIONS—*Creditors—Fraudulent and Voluntary Conveyances —Transfer of Corporate Assets.*—Only by a transfer for value can the property of a corporation or other debtor be so transferred as to defeat the claims of creditors.

4. CORPORATIONS—*Consolidation—Consolidated Company Not a Purchaser for Value.*—A new corporation formed by the consolidation or merger of other corporations does not occupy the relation of a purchaser for value of the property of the old companies, where it gives nothing for the property but its own capital stock.

5. CORPORATIONS—*Consolidation—Consolidated Company a Purchaser for Value—Liability of New Company for Claims Against Old Company.*—If the property of a corporation merged in a new corporation is acquired by the new corporation by actual *bona fide* purchase for value, the new corporation is not liable for claims against the old company which do not constitute liens upon the property purchased.

6. CORPORATIONS—*Consolidation—Liability of the Consolidated Corporation for the Unsecured Debts of Its Constituent Companies.*—In the absence of statute fixing the liability of the new corporation, the liabilities of a consolidated corporation for the unsecured debts of its constituent companies rests upon the agreement, express or implied, of the consolidated corporation to pay such debts.

7. IMPLIED CONTRACTS—*Property in the Hands of One Which in Equity Belongs to Another.*—Wherever property or money in the hands of one party in equity and in good conscience belongs to another, the law operating on the parties creates the duty, establishes the privity and implies the promise and obligation on the part of the party so holding the property of another on which an action against him is founded.

8. CORPORATIONS—*Consolidation—Liability of Consolidated Corporation for Liabilities of the Constituent Companies—Express or Implied.*—Where the circumstances are such that the law implies a promise on the part of a consolidated corporation to pay the liabilities of the constituent companies, the situation is precisely the same in principle, as if such promise were an express promise.

9. CORPORATIONS—*Consolidation—Liability of a Consolidated Corporation for Liabilities of the Constituent Companies Where it Has Not Received All the Property of the Constituent Companies.*—It is not essential to the existence of the liability of a consolidated corporation for debts or claims against a constituent corporation that the new corporation should have received all of the property of the constituent company. The new com-

pany is liable for the debts of the uniting companies to the extent of the property received by it.

10. CORPORATIONS—*Consolidation—Liability of Consolidated Company for. Claims Against Constituent Companies—Property Retained by Constituent Company.*—If there is not sufficient property retained by the constituent company, within the jurisdiction of the courts of the State, to satisfy the obligation of such company to a claimant, so that the remedy of the claimant is substantially impaired, and the other requisite circumstances exist, the liability of the consolidated company to the claimant will arise. If there is sufficient property retained by the constituent company, the liability does not arise.

11. CORPORATIONS—*Consolidation—Liability of Consolidated Company for Claims Against Constituent Companies—Continued Existence of Constituent Companies.*—It is not essential to the liability of a consolidated corporation for the debts or claims against its constituent corporations that the constituent companies should cease to exist *de jure* upon the organization of the new corporation. The going "out of existence" of constituent companies is the cessation of all actual transactions of business as a going concern. Its continued existence *de jure* for the purpose of winding up its affairs is immaterial.

12. EXPRESS COMPANIES—*Action Against Express Company for Loss in Transit—Evidence Sufficient to Support Finding of Jury that the Express Company Received the Goods Lost.*—Where plaintiff in an action against an express company to recover damages for goods lost in transit testified, without objection, that prior to the trial he received a receipt from defendant's agent at the place of delivery, showing the shipment in question, which receipt was shown by other testimony to have been turned over to counsel for the defendant prior to the trial, there was ample evidence to support the finding of the jury to the effect that defendant company received the goods in question for transportation to plaintiff as alleged.

Error to a judgment of the Circuit Court of Accomac county in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

This is an action brought by the defendant in error, J. W. Downing, against the plaintiff in error, the American Rail-

way Express Company, to recover certain alleged damages occasioned by the loss, in transit, of 840 pounds of Paris green, a portion of a shipment of that commodity which, it is alleged, the Adams Express Company, on the .... day of June, 1918, received at Kensington, Ill., as the property of, and undertook to transport to, the said Downing at a certain station in Virginia on the N. Y., P. & N. R. R.

The respective parties to the action will be hereinafter referred to as plaintiff and defendant, in accordance with their positions in the trial court.

The Adams Express Company was engaged in the express transportation business, as a common carrier, from said place of shipment in Illinois to said place of destination in Virginia, at the time of said shipment and up to June 30, 1918, inclusive. On the last-named day the Adams Express Company terminated its said business, not only between said points, but also throughout Virginia and the United States; and the defendant, on and after July 1, 1918, undertook, as a common carrier, to carry on, throughout the United States, the express transportation business theretofore transacted by the Adams Express Company, the American Express Company, the Wells-Fargo Express Company, and the Southern Express Company.

The defendant, the American Railway Express Company, is a corporation, incorporated under the laws of the State of Delaware on June 22, 1918, and as such authorized to engage in and carry on throughout the States, Territories and possessions of the United States and in the District of Columbia and in adjacent foreign countries, the express transportation business, as a common carrier; the authorized capital stock of the defendant being $40,000,000, divided into 400,000 shares of the par value of $100.00 each, the minimum capital stock with which the corporation was authorized to commence business being $33,000,000.

The undertaking aforesaid, on the part of the defendant,

the American Railway Express Company, on and after July 1, 1918, to carry on throughout the United States the transportation business theretofore transacted by the Adams, the American, the Wells-Fargo and the Southern Express Companies, was entered into in pursuance of an agreement between the four companies last mentioned and the defendant. That agreement was entered into some time in June, 1918, prior to July 1, 1918. There is no copy of such agreement in the record of the case before us, and what are or are not some of its provisions may be said to be left in some doubt. At any rate, one of the subjects of controversy in the instant case is whether such agreement on the part of the defendant expressly stipulated that it would be liable for and would pay all of the unsecured indebtedness of the Adams Express Company existing on July 1, 1918.

There are other provisions of said agreement and certain facts attending the organization and the beginning of the business of the defendant on July 1, 1918, and the passing into its hands on that day of certain property of the Adams Express Company, about which, however, there is no controversy in the case and which appear from the record before us. These are as follows:

The defendant began its business aforesaid on July 1, 1918. Prior to that date it owned no property whatever. On that date, in pursuance of said agreement between it and the four other express companies aforesaid, the defendant took over from such four other express companies certain property theretofore belonging to such other companies at a valuation of $30,000,000, to be paid for by the issuance of capital stock of the defendant of the par value of that amount and delivery of such stock to such four other express companies. The property of the Adams Express Company which was thus acquired by the defendant was the whole of the tangible property then owned and used by the Adams Express Company in its express business

aforesaid throughout the United States, including all of such property in Virginia, which was considerable in quantity; and this property was taken over, as aforesaid, at its book value, *i. e.*, its value as carried at the time on the books of the Adams Express Company. What this precise value was, or what was the precise amount of the stock of the defendant which was given therefor to the Adams Express Company, does not appear from the record before us; but it does appear from the record that this value and stock amounted to a great many millions of dollars—far more than sufficient to pay the plaintiff's claim.

At the time the property aforesaid of the Adams Express Company was taken over, as aforesaid, on July 1, 1918, and the defendant agreed to issue its stock therefor, as aforesaid, the defendant knew that an indefinite number and amount of unliquidated claims against and unsecured obligations of the Adams Express Company, of the character of the claim of the plaintiff, were in existence, outstanding and unsatisfied.

At the time of the trial the defendant, as a matter of fact, had issued and delivered to the Adams Express Company only about seventy-five per cent of the stock which was to be issued to it, as aforesaid, in payment for the property of the Adams Express Company taken over by the defendant, as aforesaid.

After June 30, 1918, the Adams Express Company had no agent in Virginia on whom process could be served so as to commence a suit or action in Virginia against it; nor any property in Virginia which could be attached. It appears that on and after July 1, 1918, the Adams Express Company did own some property, located elsewhere than in Virginia, and other than that which was turned over to the defendant, as aforesaid; but what was the character or value of such other property, or just where it was or is located, does not appear.

So far as appears from the record, the Adams Express Company, on and after July 1, 1918, has engaged in no business other than that of winding up its affairs, including the liquidation of its outstanding liabilities and obligations; and for that purpose has had an office in New York city, with its official organization intact, consisting of its president, secretary, treasurer, general counsel and its claim departments.

Other material circumstances are referred to in the opinion of the court.

*Stewart K. Powell,* for plaintiff in error.

*S. James Turlington* and *Ernest Ruediger,* for defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The following is the chief question presented for our decision by the assignments of error, namely:

[1] 1. Is the defendant answerable to the plaintiff for the liability of the Adams Express Company to the plaintiff which existed at the time the defendant took over the entire business of the Adams Express Company as a going concern and all of the tangible property of the latter theretofore used in its business, because of the circumstances that the entire existence of the Adams Express Company as a going concern was consolidated or merged in the defendant; that the liability existed at the time of such consolidation or merger, and was actually or constructively known to the defendant to so exist; that the property so taken over was more than sufficient to pay the liability, and that the defendant did not undertake to pay anything for the property except its own capital stock?

This question must be answered in the affirmative.

[2] As said in 6 Am. & Eng. Enc. Law (2nd ed.) p. 818, sec. 4: "When two or more corporations are consolidated into a new corporation with a new name, and the constituent corporations go out of existence, if no arrangements are made respecting their property and liabilities, the consolidated corporation will be answerable for their liabilities, at least to the extent of the property acquired from the constituent corporations whose liability is sought to be enforced against the consolidated corporation."

[3, 4] As pointed out, however, in the valuable work just quoted, the essential elements of the liability of the new corporation in such case, and the basic reasons therefor, are: First, that only by a transfer for value can the property of a corporation or other debtor be transferred so as to defeat the claims of creditors (*Idem.*, pp. 819, 822); and, secondly, that the new corporation does not occupy the relation of a purchaser for value of the property of the old company, where it gives nothing for the property but its own capital stock.

[5] If, indeed, the property of the old company is acquired by the new corporation by actual *bona fide* purchase for value, it is well settled that the new corporation is not liable for claims against the old company which do not constitute liens upon the property purchased. *Idem.*, p. 819.

Concerning a similar situation to that under consideration in the case in judgment, this is said in *Young* v. *The Steamboat Key City*, 14 Wall. 653, 20 L. Ed. 896: "* * *, neither the stockholders of" (the old company) "nor of the new corporation have ever parted with or paid any money or other thing of value for" (the property), "otherwise than by this consolidation of the companies into one; and it is not apparent, nor even a reasonable presumption, that, if the new company has to pay the libellant's debt in this case, they will be the losers, but it is nearly certain the loss will fall where it should—on the stockholders coming in through the" (old company).

As said in 5 Thomp. on Corp. (2nd ed.), sec. 6083: "* * * the consolidated corporation, as a rule, even in the absence of statute, or agreement, assumes all the lia-´ bilities of the constituent companies, and they may be enforced by a direct action against it as it is presumed to have notice of the rights of creditors."

As said in *Jennings, Neff & Co.* v. *Crystal Ice Co., etc.,* 128 Tenn. 236, 159 S. W. 1088, 1089, 47 L. R. A. (N. S.), p. 1061: "The doctrine that corporate assets are a trust fund, at least to the extent that creditors are entitled in equity to payment of their debts before any distribution of corporate property is made among stockholders, is fully established in Tennessee, and creditors have a right to follow its assets or property into the hands of any one who is not a holder in good faith in the ordinary course of business. *Vance* v. *McNabb, etc., Co.,* 92 Tenn. 47, 20 S. W. 424; Pom. Eq. Jur., par. 1046.

"There is abundant authority likewise for the proposition that where one corporation, for its own stock and bonds, purchases all the assets of another, without provision for the debts of the latter, the transaction is out of the ordinary course of business, and the very circumstances of the case imply full knowledge on the part of the purchasing corporation of all facts necessary to charge the property in its hands with the debts of the selling corporation." (Citing authorities.)

\*      \*      \*      \*

"It follows that when the purchasing corporation took over in exchange for its own stock and bonds the assets of the other, and permitted these securities, which had been substituted for the visible tangible property of the selling corporation, to be distributed among the stockholders of the latter, without provisions for the creditors of the latter, it thereby became a party, with full notice, to the diversion of a trust fund. As such, the purchasing corpora-

tion holds the property so acquired impressed with the same trust with which the property was originally charged, and the purchasing corporation is liable to the creditors of the selling corporation to the extent of the value of the property thus obtained.

"Creditors of the old corporation cannot be required to look alone to the stock and bonds which were substituted for the real, tangible assets of that corporation. The value of the securities so substituted is more or less problematical, and creditors should not be forced to surrender their claims against available, visible assets, and transfer such claim to new securities. Their remedy cannot be hindered and impaired for the benefit of stockholders. * *. *

"We are aware that there is some conflict in the cases as to the right of creditors under circumstances such as these, but we think the views we have expressed are sustained by the weight of authority. We have no hesitancy in announcing our belief that such views are correct, and they are in harmony with the following cases: *Altoona* v. *Richardson Gas & Oil Co.,* 81 Kan. 717, 106 Pac. 1025, 26 L. R. A. (N. S.) 651; *Grenell* v. *Detroit Gas Co.,* 112 Mich. 70, 70 N. W. 413; *Hurd* v. *New York, etc., Steam Laundry Co.,* 167 N. Y. 89, 60 N. E. 327; *McIver* v. *Young Hardware Co.,* 144 N. C. 478, 57 S. E. 169, 119 Am. St. Rep. 970; *Ft. Payne Bank* v. *Alabama Sanitarium,* 103 Ala. 358, 15 So. 618; *Chattanooga R. & C. R. R. Co.* v. *Evans,* 66 Fed. 809, 14 C. C. A. 116, 31 U. S. App. 432; *Hibernia Ins. Co.* v. *St. Louis & N. O. Transp. Co.* (C. C.), 4 McCrary, 432, 13 Fed. 516; *Vicksburg & Y. City Teleph. Co.* v. *Citizens Teleph. Co.,* 79 Miss. 341, 30 So. 725, 89 Am. St. Rep. 656."

See also to same effect notes in 47 L. R. A. (N. S.) 1058-9; 11 *Idem.* 1119-1132, and cases cited.

[6] Many of the authorities, in the absence of statute fixing the liability (which is the situation touching the case in judgment), regard the liabilities of the consolidated cor-

poration for the unsecured debts of its constituent companies as in truth resting upon the agreement, express or implied, of the consolidated corporation to pay such debts; and this we think, upon principle, is, in such case, the true ground on which the obligation rests.

In *Morrison* v. *American Snuff Co.*, 79 Miss. 330, 30 So. 723, 89 Am. St. Rep. 598, this is said: "The foundation of the liability of a consolidated corporation may rest on a statute, or on an agreement, either expressed or implied. If the statute does not provide that the new company shall assume the debts and liabilities of the constituent companies, and there is no expressed agreement respecting the same, the debts of the original companies follow as an incident of the consolidation and become by implication the obligations of the new corporation." (Citing authorities.)

[7] The consolidated company has in its hands property which, in equity and good conscience, belongs to the plaintiff to the extent of having his claim satisfied thereby; and, wherever property, or money, is so held, "the law operating on the acting parties creates the duty, establishes the privity *and* implies the promise and obligation on which the action is founded." *Brewer* v. *Dyer*, 7 Cush. (Mass.) 339. See to same effect, *Moses* v. *Macferlan*, 2 Burrow 1012; Clark on Contracts, sec. 314, p. 757; *Norfolk* v. *Norfolk County*, 120 Va. 356, 91 S. E. 820; 2 R. C. L., sec. 9, pp. 749-750.

[8] Where the circumstances are such that the law implies the promise on the part of the consolidated corporation to pay the liabilities of the constituent companies, the situation is precisely the same in principle, as if such promise were an express promise; and the plaintiff for whose benefit such promise exists may recover upon it by action at law against the promisor, upon either of the principles aforesaid. *Langhorne* v. *Richmond R. Co.*, 91 Va. 369, 22 S. E. 159, and *Cosmopolitan Life Ins. Co.* v. *Koegel*, 104 Va. 619, 629-631, 52 S. E. 166.

As said in *Langhorne* v. *Richmond R. Co., supra:* "Where two * * * companies unite or become consolidated under the authority of law, the presumption is, until the contrary appears, that the united or consolidated company has all the powers and privileges, and is subject to all the restrictions and liabilities of those out of which it is created. *Tomlinson* v. *Branch,* 15 Wall. 460, and *Tennessee* v. *Whitworth,* 117 U. S. 139, 147. The corporation which is created by such consolidation * * * is ordinarily deemed the same as each of the corporations which formed it for the purpose of answering for the liabilities of the old corporation, and may be sued under its new name * * * for their debts as if no change had been made in the name, or in the organization of the original corporations. Jones on Railroad Securities, sec. 415; 1 Thompson's Com. on Corp., secs. 372, 373, 395; 1 Beach on Private Corp., secs. 343, 344; 1 Morawetz on Corp., sec. 955; Taylor on Corp., sec. 666; 4 Am. & Eng. En. Law, 272, n."

And, as held in *Cosmopolitan Life Ins. Co.* v. *Koegel,* the plaintiff's right of action exists in "those cases in which the defendant has in his hands money which in equity and good conscience belongs to the plaintiff, as where one person receives from another money or property as a fund from which certain creditors of the depositor are to be paid, and promises, by his acceptance of the money or property without objection to the terms on which it is delivered to him, to pay such creditors. See note 1 Chitty on Pl., p. 5, where a number of cases are cited as belonging to a class in which it is said 'the law (in such cases) creates the privity and implies the promise.' " (Citing also numerous other authorities to the same effect.)

[9] It is not essential to the existence of the liability of the new corporation which we have been considering that such corporation should have received *all* of the property of its constituent companies. As said in 5 Thomp. on Corp.

(2nd ed.), sec. 6085: "Consolidated companies receiving most of the property of the old companies are held to be liable for the debts of such uniting companies to the extent of the property received by them." See to same effect *Berthold v. Holladay-Klotz Land & Lumber Co.,* 91 Mo. App. 233; *Hurd* v. *New York, etc., Steam Laundry Co.,* 167 N. Y. 89, 60 N. E. 327.

[10] In truth, the quantity of the property transferred, as compared with that retained, is material only to this extent: If there is not sufficient property retained by the constituent company, within the jurisdiction of the courts of the State, to satisfy the obligation of such company to the plaintiff, so that the remedy of the plaintiff is substantially impaired, and the other aforesaid requisite circumstances exist, the liability we have been considering will arise; if, on the other hand, there is sufficient property so retained, as to leave the remedy of the plaintiff substantially unimpaired, even if the aforesaid other circumstances do exist, the liability will not arise.

[11] Again: It is not essential to the new corporation being considered as a *consolidated company,* within the meaning of those terms as used in the authorities above cited and quoted from, nor to the liability of the new corporation above referred to, that the constituent companies should cease to exist *de jure* upon the organization of the new corporation. The going "out of existence" of the constituent companies—to which the quotation above made from 6 Am. & Eng. Enc'l Law, sec. 4, p. 818, and other authorities on the same subject refer—is the cessation of all actual transaction of business as a going concern—the *de facto* cessation of all business—the abandonment of all life and operation according to the design of the charter of the constituent companies. The continued existence *de jure* of the constituent companies, for the purpose of winding up their affairs or other purposes, is immaterial. *Berthold* v. *Holla-*

*day-Klotz Land & Lumber Co.,* 91 Mo. App. 233; *Montgomery, etc., R. Co.* v. *Branch Sons & Co.,* 59 Ala. 139, 5 Thomp. on Corp. (2nd ed.), sec. 6041.

As said by the authority last cited: "The termination of the existence of the constituent companies is not necessary to either the accomplishment or validity of the consolidation * * * ."

The defendant relies upon *McAlister* v. *American Railway Express Co.,* 179 N. C. 556, 108 S. E. 129, 15 A. L. R. 1090, and it must be said that the holding in that case is directly contrary to our holding above. But such holding is, as we think, also directly contrary to the great weight of authority and to the true principles involved, and for those reasons we cannot follow it.

The other cases relied on by the defendant are the following: *Seaboard Air Line Ry. Co.* v. *Leader,* 115 Ga. 702, 42 S. E. 38; *Whiting* v. *Malden, etc., R. Co.,* 202 Mass. 298, 88 N. E. 907, 132 Am. St. Rep. 493; *Austin* v. *Tecumseh Nat. Bank,* 49 Neb. 412, 68 N. W. 628, 35 L. R. A. 444, 59 Am. St. Rep. 543; *Colorado, etc., R. Co.* v. *Albrecht,* 22 Colo. App. 201, 123 Pac. 957; *Bruffett* v. *Great Western R. R. Co.,* 25 Ill. 353; *Hallidie Machinery Co.* v. *Washington Brick, etc., Co.,* 70 Wash. 80, 126 Pac. 96. These cases are not inconsistent with our holding above. They hold merely that, in the absence of statute imposing the liability, for the new corporation to be liable for the unsecured debts of its predecessor, it must appear, either that the new corporation expressly assumed the liabilities of its predecessor or that the circumstances are such that the law charges the new corporation with such liability; that, in the absence of a statutory provision on the subject, the mere fact that the property of a company is acquired by another company or individual does not of itself make the new holder of the property liable for the debts of the seller of it; for, *non constat,*

the new holder may have been a *bona fide* purchaser of the property for value in the ordinary course of business, in which case such holder would not be liable for debts which were not liens on the property.  All of this is in entire accord with true principles and with our views upon the subject.

Much of the argument before us has concerned the question of fact of whether there was an express agreement in the case in judgment on the part of the defendant to pay the unsecured debts and liabilities of the Adams Express Company existing at the time of the consolidation aforesaid; but our view being, as aforesaid, that under the circumstances of this case, the law will imply such agreement, it is, of course, unnecessary for us to deal with such question of fact.

[12] There is but one other question presented by the assignments of error for our decision, and that is this: ·

2. Was there sufficient evidence before the jury to support their finding to the effect that the Adams Express Company, in June, 1918, received, at Kensington, Ill., the quantity of the goods in question for transportation to the plaintiff, as alleged?

This question must be answered in the affirmative.

A witness for the plaintiff, who was the depot agent of the defendant at the place of destination of the goods in Virginia, was permitted by the trial court, over the objection of the defendant, to testify as to what a certain entry in the delivery record book of the Adams Express Company showed was the shortage on a shipment of said goods to the plaintiff from Kensington, Ill., on May 18, 1921, which was a different shipment from that on which the action was based.  The defendant contends that such testimony as to such book entry was improperly admitted in evidence for several reasons (which need not be set forth here), and hence that the case should be considered as if such testi-

mony were not in the record; and that if such testimony were stricken out of the record there would be no testimony left to support the verdict in the particular in question. This position of the defendant overlooks the fact that the plaintiff himself testified, without objection thereto on the part of the defendant, that prior to the trial he received a receipt from "the agent at Kensington, Ill., * * * showing the shipment" in question, which receipt, other testimony for plaintiff before the jury showed, was turned over to counsel for the defendant prior to the trial. The agent at Kensington, Ill., was agent for the defendant at the time he sent the plaintiff the receipt mentioned. There was, therefore, ample evidence before the jury to support the finding in question.

The case will be affirmed.

*Affirmed.*