**EARLY, Collector of Internal Revenue for District of Virginia, v. SOUTHGATE CORPORATION.**

No. 5051.

Circuit Court of Appeals, Fourth Circuit.

June 2, 1943.

Paul S. McMahon, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., Sterling Hutcheson, U. S. Atty., of Richmond, Va., and Russell T. Bradford, Asst. U. S. Atty., of Norfolk, Va., on the brief), for appellant.

William L. Parker and Hugh W. Davis, both of Norfolk, Va., for appellee.

Before PARKER, DOBIE, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an action brought in the District Court of the United States for the Eastern District of Virginia, at Norfolk, by the appellee, Southgate Corporation, here referred to as the taxpayer, against the appellant, N. B. Early, Jr., Collector of Internal Revenue for the District of Virginia, to recover money paid as excess profits taxes, with interest.

After a hearing the trial Judge filed a memorandum opinion making findings of fact, stating his conclusions of law, and finding in favor of the taxpayer. Judgment was entered for the plaintiff in the sums of $1,415.03 and $489.85 with interest. From this judgment this appeal was brought.

There is no dispute as to the facts which were found by the Court as follows:

"For some years prior to September, 1934, Southgate Holding Corporation, a Virginia corporation, was the owner of all of the capital stock of five other Virginia corporations. Those five corporations were merged with the Southgate Holding Corporation pursuant to the laws of the State of Virginia on September

24, 1934, and on September 26, 1934. In June, 1938, the name of the corporation was changed to Southgate Corporation and this suit is brought by the plaintiff under that name. The defendant is the Collector of Internal Revenue for the District of Virginia, to whom the taxes and interest involved in this controversy were paid.

"Under the provisions of Section 701(a) of the Revenue Act of 1934 [26 U.S.C.A. Int.Rev.Acts, page 787], which levied an excise tax measured by the declared value of capital stock of 'every domestic corporation with respect to carrying on or doing business for any part of such year' (each year ending June 30, beginning with the year ending June 30, 1934), each of the six corporations filed a separate capital stock tax return in which it declared the separate value of its own capital stock with unrestricted discretion. The values declared for the 1934 capital stock taxable period were as follows:

"For some years each of the corporations had used the period ended September 30 as the end of its fiscal year and income tax returns were filed on that basis. After the merger Southgate Holding Corporation continued to treat September 30 as the end of its fiscal year and made its tax returns on that basis.

"For the capital stock tax period ended June 30, 1935, only Southgate Holding Corporation filed a timely capital stock tax return on July 29, 1935. In that return the adjusted declared value of the plaintiff was set forth at $308,563.23, which had been computed by taking $400,000 as the base (the aggregate amount declared by the six corporations for the 1934 period) and making the statutory adjustments for each corporation separately and adding the adjusted declared values of the six corporations to arrive at the total amount stated. Subsequently, Southgate Holding Corporation filed its income and excess profits tax return for its fiscal year ended

| Name of Corporation | Date of Filing | Amount declared as value of entire capital stock as of June 30, 1934 |
|---|---|---|
| Southgate Holding Corp. | August 29, 1934 | $ 10,000 |
| Southgate Terminal Corp. | September 25, 1934 | 100,000 |
| T. S. Southgate & Co., Inc. | August 29, 1934 | 60,000 |
| Southgate Molasses Co., Inc. | August 29, 1934 | 160,000 |
| Southgate Coal Co., Inc. | August 29, 1934 | 10,000 |
| Southgate Storage Co., Inc. | August 29, 1934 | 60,000 |
| Total | | $400,000 |

"The statutory time limit for filing 1934 capital stock tax returns, as extended, was August 30, 1934, and the returns filed by the corporations were timely. Shortly after the mergers and on or about September 29, 1934, Southgate Holding Corporation attempted to file an amended capital stock tax return for the 1934 period in which the declared value was set out at $400,000, the aggregate sum of the values declared by the six merged corporations. The amended return, not being timely, was rejected by the Commissioner of Internal Revenue.

"After July 1, 1934 (the beginning of the 1935 capital stock tax taxable period), and until the dates of the mergers—September 24 and 26, 1934—each of the corporations, including the plaintiff, separately carried on and did business.

September 30, 1935. In this return an excess profits tax credit of $38,500 (12½% of $308,500) was claimed based on the adjusted declared value of $308,563.23 which the plaintiff has set out in its 1935 capital stock tax return. On that basis no excess profits tax was due from the plaintiff for its 1935 fiscal year.

"Upon audit of the plaintiff's 1935 capital stock tax and income and excess profits tax returns, the defendant Collector of Internal Revenue and the Commissioner of Internal Revenue refused to accept the adjusted declared value of $308,563.23 for either capital stock tax or excess profits tax returns. It was held that Section 701 of the Revenue Act of 1934 provides that the adjusted declared value of the plaintiff for the period ended June 30, 1935, shall be the declared value for the period ended

June 30, 1934 (which value cannot be amended), with certain adjustments not applicable to the case, less the excess of the deductions allowable for income tax purposes over the gross income for the taxable year ended June 30, 1934. Applying this interpretation of the law it was held that the plaintiff must use as the basis for computing its 1935 adjusted declared value the amount of $10,000 declared in its 1934 return, instead of the amount of $400,000, the aggregate of declared values for 1934 of all six corporations which later merged. Then by applying the statutory adjustments it was held that the plaintiff was entitled to no credit in computation of its 1935 excess profits tax. This resulted in the assessment against plaintiff of a deficiency of $1,689.06, excess profits taxes, with interest of $215.82, a total of $1,904.88, the amount involved in this suit. The deficiency tax, with interest, was paid by the plaintiff. Claims for refund thereof were filed and upon rejection by the Commissioner of Internal Revenue this action was timely commenced."

The Court also found that the attempt of the plaintiff on September 29, 1934, to file an amended return as of June 30, 1934, may be treated as of no effect for the reason that on June 30, 1934, the true value of the capital stock of Southgate Holding Corporation as that corporation then existed was only $10,000. The adjusted value of $308,563.23 existed only after the merging of the corporations was completed in the latter part of September of that year.

The Court further found that, under the statutes of the State of Virginia, Sections 3822, 3823 and subsequent sections (Michie's Code of Virginia, 1936), the merging corporations became in law and in fact a single entity, but without terminating the corporate existence of any of them.

The sole question presented on the appeal is whether a corporation which absorbed wholly owned subsidiaries through mergers may add to its own declared value of capital stock the values declared by the subsidiaries in computing its adjusted declared value of capital stock in the following taxable period.

The Treasury Regulations involved is Regulations 64 (1936 Ed.) which reads as follows:

"Art. 46.—Application of adjustments to specific transactions.—

"(c) Mergers.—If two or more corporations are merged after the close of the income-tax taxable year as of which the surviving or continuing corporation made an original declared value for its capital stock, the continuing corporation will be required to make all necessary statutory adjustments, using for such purpose the original (or adjusted) declared value established by it prior to the merger. In such case the original (or adjusted) declared value established by the merged or discontinued corporation prior to the merger does not, by reason of the merger, become an addition to the original (or adjusted) declared value of the continuing corporation. As to the effect of the merger upon the discontinued corporation, see paragraph (d) of this article. Whether the merger as such requires any adjustment to the original or adjusted declared value of the continuing corporation depends upon the manner in which the merger was effected. Thus, if the continuing corporation issued additional shares of its stock in consideration for and to acquire either the stock or the assets of the merged corporation, the fair market value of the stock or assets so acquired would constitute an additional adjustment. If, on the other hand, the continuing corporation, as parent company, already owned the capital stock of the merged corporation and the merger was effected by surrender of such stock in exchange for the assets of the merged corporation, no adjustment would result (except as reflected in net income), since there would be merely the exchange of one form of property (stock of the subsidiary) for another (assets of the subsidiary)."

One of the Virginia statutes, under which the merger of the six corporations took place, is Section 3823 of the Code, which reads as follows: "Upon the perfecting, as aforesaid, of the said merger or consolidation, the several corporations parties thereto shall be deemed and taken as one corporation, upon the terms and conditions and subject to the restrictions set forth in said agreement, and all and singular the rights, privileges, and franchises of each of said corporations, parties to the same, except as restricted by law, and all property, real and personal, and all debts due on whatever account, as well of stock subscriptions as other things in action, belonging to each of such corporations, shall be taken and deemed as transferred to and vested in such new corporation without further act or deed; and

all property, all rights of way, and all and every other interest shall be as effectually the property of the new corporation as they were of the former corporations parties to the said agreement; and the title to real estate, either by deed or otherwise, under the laws of this State vested in either corporation, shall not be deemed to revert or be in any way impaired by reason of this chapter: but, the rights of creditors and all liens upon the property of either of said corporations shall be preserved unimpaired; and the respective corporations shall be deemed to continue in existence to preserve the same; and all debts, liabilities, and duties of either of said companies shall thenceforth attach to said new corporation and be enforced against it to the same extent as if the said debts, liabilities, and duties had been incurred or contracted by it."

It is contended on behalf of the appellant that the capital structure of the continuing corporation was not affected by the merger and that although the 1935 capital stock tax return was filed after the merger there could be no change in the capital of the single continuing corporation; that while the changed conditions brought about by the merger would be considered in computing the excess profits tax, such changed conditions would not affect the capital structure of the surviving corporation. It is also contended that having filed this tax return, whether the return showed a high or low figure, this return became absolutely binding on the taxpayer in connection with the excess profits tax.

It is contended on behalf of the taxpayer that under a correct interpretation of the Virginia statutes there was a substantive change in the capital of the continuing corporation after the merger.

In discussing a question of mergers the Supreme Court said, in the case of Helvering, Commissioner v. Metropolitan Edison Company, 306 U.S. 522, 59 S.Ct. 634, 637, 83 L.Ed. 957: "The petitioner concedes that if there has been a true merger or consolidation whereby the identity of the corporation issuing the bonds continues in the successor and the latter becomes liable for the debts of the former by operation of law, the successor may deduct amortization of discount and expense in respect of bonds issued by its predecessor as well as unamortized discount and expense on any of such bonds retired prior to maturity. The rule is not applicable upon a mere sale by one corporation of all its assets to another which assumes the liabilities of the former."

In discussing the legal effect of a merger under the Virginia law, the Circuit Court of Appeals for the Second Circuit said, in the case of American Gas & Electric Co. v. Commissioner of Internal Revenue, 85 F.2d 527, 530:

"We have held that there could be no deductions for amortization in case of the bonds of Virginian and of Electric Company of New Jersey because the obligations of the original obligors were not carried forward against the transferees by consolidation or merger so as to preserve the identities of the transferor companies. But the situation of the bonds of the Appalachian Power Company is different. Under the decisions of New York Central R. Co. v. Commissioner, 2 Cir., 79 F.2d 247, and Western Maryland R. Co. v. Commissioner, 4 Cir., 33 F.2d 695, deductions should be allowed in the case of those bonds if there was a merger of Appalachian Power Company in the Appalachian Electric Power Company which essentially preserved the identity of the transferor. In Langhorne v. Richmond Ry. Co., 1895, 91 Va. 369, at pages 374, 375, 22 S.E. 159, 161, where there had been a consolidation, the court said:

" 'The corporation which is created by such consolidation, or the surviving corporation, where another or others are merged into it or consolidated with it, is ordinarily deemed the same as each of the corporations which formed it for the purpose of answering for the liabilities of the old corporation, and may be sued under its new name or under the name of the surviving company for their debts as if no change had been made in the name or in the organization of the original corporation. * * *

" 'Since, by authority of law and the act of the parties, the consolidated corporations are moulded into one with none of their rights impaired, and none of their responsibilities lessened, there is no good reason why the same proceedings may not be had against the new corporation as might have been had against the old to compel payment of liabilities.'

"The decisions of the Virginia Court of Appeals in American Ry. Exp. Co. v. Downing, 1922, 132 Va. 139, 111 S.E. 265 and in American Ry. Exp. Co. v. Fleishman, Morris & Co., Inc., 1928, 149 Va.

200, 141 S.E. 253, as well as in the Langhorne decision, supra, seem to show that, where there is a merger or consolidation under the Virginia law, the transferee corporation succeeds by operation of law to all the rights and liabilities of the former company and carries forward its identity. The allowance of the deductions for the bonds of the Appalachian Power Company is governed, then, by our decision in New York Central R. Co. v. Commissioner, supra."

That the courts will not permit an illogical or unjust interpretation of the tax law was well stated by Judge Parker, of this court, in Western Maryland Ry. Co. v. Commissioner of Internal Revenue, 4 Cir., 33 F.2d 695, 698, where he said:

"'courts will not permit themselves to be blinded or deceived by mere forms of law but, regardless of fictions, will deal with the substance of the transaction involved * * *.'

"The rule just stated is of peculiar importance in tax cases; for, unless the courts are very careful to regard substance and not form in matters of taxation, there is grave danger on the one hand that the provisions of the tax laws will be evaded through technicalities and on the other that they will work unreasonable and unnecessary hardship on the taxpayer. * * *"

We are of the opinion that the Court below was right in holding, as stated in his memorandum opinion, that the changes that occurred in the merging of the corporations in 1934 were substantive and not of form only, and that the merging corporations became a single entity but without terminating the corporate existence of any of them. American Gas & Electric Co. v. Commissioner, supra; Langhorne v. Richmond Ry. Co., supra; American Ry. Exp. Co. v. Downing, supra; American Ry. Exp. Co. v. Fleishman, Morris & Co., Inc., supra.

Even should it be concluded that the regulations relied upon by the appellant justified the action of the Commissioner of Internal Revenue, the regulations would be unreasonable.

We agree with the Judge below when he says, in concluding his opinion: "If the case presented were one of affiliated corporations seeking to make a consolidated return, the above quoted provision would be applicable, but to treat the present case as one of an affiliated group of corporations would be to go in the very teeth of the Virginia statutes, pursuant to which the six corporations were consolidated, it seems to me that the error in the Commissioner's action lies in the fact that in determining the net income he has treated the six corporations as a single entity while in assessing the tax he has treated them as six separate entities, choosing the one with the smallest capital stock as the convenient entity to assess."

The judgment of the court below is accordingly affirmed.